STATE BANK OF ARTHUR, Plaintiff-Appellee, Cross-Appellant, *v.* B. G. SENTEL, Defendant-Appellant—(MAXINE J. SENTEL, Cross-Appellee.)

STATE BANK OF ARTHUR, Plaintiff-Appellee, *v.* H. E. KENDALL, Defendant-Appellant.

(No. 11670;

Fourth District—March 1, 1973.

Glenn & Logue, of Mattoon, (Thomas J. Logue, of counsel,) for appellants.

Ryan & Heller, of Mattoon, (Dale A. Cini and Willis P. Ryan, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a judgment in favor of State Bank of Arthur entered against B. G. Sentel and H. E. Kendall on promissory notes executed by them and a cross appeal by the State Bank of Arthur of the dismissal of the suit against Maxine Sentel.

Two separate judgments by confession were obtained, the first on a promissory note for $60,000.00 dated February 23, 1966 and signed by B. G. Sentel and Maxine Sentel and the second, upon a promissory note of the same date and amount signed by H. E. Kendall. After the judgments by confession were opened, the suits were consolidated for subsequent proceedings. Answers were filed to the complaints admitting the execution of the notes but denying liability under the notes and asserting three affirmative defenses: (1) the failure of consideration; (2) alteration of the notes, and (3) fraud in the execution. After the trial of the case, a motion was filed to amend and add a fourth affirmative defense that the notes were an accommodation to the State Bank of Arthur. The court allowed a motion to strike this last affirmative defense and entered judgment on the notes against H. E. Kendall and B. G. Sentel, and this appeal was taken. Judgment was not entered against Maxine Sentel on the note executed by her as the court found no consideration was given. The Bank cross-appeals that ruling.

The factual background of this suit is complicated and at the trial contradictory testimony was introduced concerning the various issues. Both Dr. Kendall and Mr. Sentel were involved in the development of a medical facility near the Shelbyville reservoir. The enterprise was originally known as Merkl Development, Inc. and Kendall was the President of the corporation during various times of its existence and Sentel was its Secretary. (Subsequently, a second corporation was formed named Medical Park of the Kaskaskia and two-thirds of its stock was owned by Merkl.) In connection with the development and promotion of these

enterprises, the State Bank of Arthur took at various times a number of promissory notes from Merkl which were either guaranteed or endorsed by the Kendalls, Sentels and another person for a total of approximately $121,000.00 as of September of 1965. At that time both Mr. Sentel and Dr. Kendall were shareholders and were officers of the corporation.

In September of 1965, the three Defendants and Violet Kendall executed promissory notes to the Bank of Decatur in the amount of $121,-727.55, the proceeds of which were used to pay off the indebtedness of Merkl at the State Bank of Arthur. On December 16, 1965, the State Bank of Arthur received two new notes, one from the Sentels for $60,000.00 and one from Dr. Kendall for $60,000.00. The proceeds from these notes were used to pay off the National Bank of Decatur. These notes fell due on February 23, 1966 and were renewed by notes for sixty days. They were not paid when due. As a result, the aforesaid judgments were obtained against both the Sentels and Kendall. Included therein in the judgments obtained were interest, attorneys fees and costs.

The issues raised by this appeal are whether the trial court erred in finding consideration for the notes and that there was no alteration and no fraud in the execution of the notes by Mr. Sentel and Dr. Kendall. An issue is also raised as to the striking of the alleged affirmative defense of alteration. As to the cross-appeal, the issue is whether there was consideration given for the note by Maxine Sentel.

■■ In reviewing the points raised, it is first to be noted the issues are factual and that there is conflicting evidence on many of these issues. However, the trial court having seen the witnesses and heard the testimony is more appropriately the court where these resolutions should be made. Unless it can be shown that its findings of fact are clearly contrary to the manifest weight of the evidence, the trial court's resolutions of credibility will not be overturned. *Schulenburg v. Signatrol*, 37 Ill.2d 352, 226 N.E.2d 624; *Comm v. Goodman*, 6 Ill.App.3d 847, 286 N.E.2d 758.

■■ The first affirmative defense that there was no consideration given for the notes upon which the judgment was obtained, comprises two points; the first is that when the February notes were executed, the ones upon which the judgment was obtained, the December notes were not surrendered; the second point is that no new consideration or any consideration was given directly to the makers of the notes. As to the first of these issues, the records of the Bank indicate that the December notes were paid by renewal notes in February of 1966. Although there is testimony to the contrary, the Defendants contend that these December notes were never returned to the makers but remained in the files of the Bank. The alleged fact that the bank failed to return these notes to the makers, it is argued, amounted to a failure of consideration for the notes and that

if any cause of action existed, it was upon the December notes. Assuming the truth of these factual contentions, the books and records of the Bank revealed that the proceeds from the February notes were used to credit the indebtedness on the December notes and these notes were shown as paid in full on the record of the Plaintiff bank. There was no showing of any negotiation of the December notes by the Bank of Arthur nor any showing of a demand for their return by Defendants except at the trial. The failure to return the notes, where there was a proper crediting on the books of the bank, and these records show payment of these prior notes by renewal, does not destroy the validity of the renewal notes; to hold otherwise would place form over substance and technicality over justice. In 11 Am.Jur.2d, Bills and Notes, Sec. 233, at pp. 260-262, it is stated:

> "A renewal note is supported by a sufficient consideration either in the form of the consideration for the original instrument, the antecedent debt, the surrender of the original instrument, or the extension of time obtained by the renewal, and in some cases by the fact that the renewal embraces, the compromise of a disputed claim in regard to the original. Similarly, where there is an exchange of paper or where a note is given in substitution for the note of another and the holder of the latter note surrenders it or extends the time for payment of the original obligation there is sufficient consideration for the new paper.
>
> *   *   *
>
> It is not necessary to constitute consideration for a renewal note, or a new note executed in place of an existing one, that the old note be surrendered, canceled, destroyed, or discharged. This is not called for as part of the consideration for the new note unless there is an express agreement therefor."

There was no evidence found by the trial court, nor any found in our review of the record, to support the proposition that the renewal notes were executed with the express agreement for the return of the notes they replaced.

It is also contended that there was no consideration given by the Sentels and Dr. Kendall for the February notes. A review of the evidence indicates that although Dr. Kendall and the Sentels did not receive any direct consideration—credit or cash advanced to them—Merkl did receive such. Both Mr. Sentel and Dr. Kendall engaged in actively promoting and developing properties held by Merkl and the Medical Park of the Kaskaskia. At various times, both were officers and employees of these organizations. Dr. Kendall and Mr. Sentel owned stock in the Merkl corporation. They were interested in raising money for the various pur-

poses of the corporation and did in fact lend it money personally. They also signed notes at the Bank of Arthur for money lent to the corporation and endorsed obligations of Merkl at that Bank.

At the time the loan was made by the National Bank of Decatur, Merkl was indebted to the Bank of Arthur in the amount of approximately $121,000, the major portion of which had been guaranteed by the defendants. The Bank of Arthur had indicated that the bank examiners would show the loan as an overline—an over extension of credit—and that something would have to be done with that loan. The Bank of Arthur therefore arranged for a loan made directly by the National Bank of Decatur to the Kendalls and the Sentels. The proceeds of that loan were used to pay off the loan of Merkl at the Bank of Arthur. Subsequently, other notes were executed at the Bank of Arthur, the proceeds of which were used to pay on the loan at the Bank of Decatur.

■■ From the foregoing facts, there is adequate evidence in the record to support the court's finding of consideration. That fact of payment of a corporate obligation in which the makers had an interest alone is sufficient consideration for the execution of the promissory notes and for the holding of the makers responsible on the notes, even though they did not obtain any direct personal benefit from the execution of these notes. In *National Bank & Trust Co. v. Becker*, 38 Ill.App.2d 307, 187 N.E.2d 355, judgment against individual defendants upon their guaranty of a loan of $95,000.00 to a corporation in which they were shareholders was affirmed, the court saying, at page 312:

> "* * * The defendants were not merely accommodation guarantors, but as shareholders of the corporation received a benefit from the loans and renewals made on the strength of the instruments of guaranty * * *."

The rationale for liability of borrowers connected with corporations is stated in *Meyer v. Pfahler*, 362 Ill. 336, 199 N.E. 801 at page 345 as follows:

> "The interest of each of these signers was such as to constitute a valid consideration for the transfer had they given property or money or notes directly to the banking corporation. Those who were employees, only, were directly interested in the continuance of their employment; those who were officers were likewise interested in maintaining their positions, while those who were stockholders, as nearly all the signers were, were interested in maintaining the value of their stock as an investment * * *."

The fact that consideration had been given and credit extended to a corporation in which the makers had an interest as shareholders and officers is sufficient consideration to support these notes.

██ The trial court dismissed the complaint against Maxine Sentel. She was the wife of B. G. Sentel. As previously noted in September of 1965, her husband was personally liable on Merkl loans, and her husband had loaned money to Merkl. In order to transfer the account to the Decatur bank, she signed in September of 1965 a note for $60,000.00 to that bank. This was because the Bank of Arthur "had to do something about the Merkl loans". Obviously, if the overline was not removed, proceedings would have begun against her husband on the notes that he had guaranteed or co-signed for Merkl. In December, she executed a note of Plaintiff to remove the loan at the Decatur Bank. Under this factual situation where the wife is a co-maker of the note paying for the husband's obligations, there is consideration to the wife as she shares in his wealth and his inheritance. The extension of credit was made to her husband on the basis of her signature and she had a direct interest in the extension.

The next issues raised are that of fraud and alteration of the notes sued upon. Essentially the alteration and fraud arguments are the same—the failure to complete the document as allegedly authorized. Plaintiffs argue that the notes were fraudulently obtained because they were supposed to be Merkl notes and not individual notes. The testimony presented on behalf of the Plaintiff bank was that the notes were intended to be personal notes and that they were typed out that way by an officer of the bank prior to their delivery and prior to signing. The notes themselves were signed, not in any capacity as a corporate officer, but by the individuals in their individual capacities. The defendants at first denied any recollection of signing the December notes but later admitted signing the February notes.

██ The testimony of the bank officers is supported by the record of extrinsic facts. The initial notes in September to Merkl were guaranteed or co-signed by both Kendall and Sentel; they were both liable on these notes. The notes to the Bank in Decatur were personal notes and they were liable on those notes. The December notes were personal notes and they were liable on those notes. It seems incongruous, to say the least, that all of a sudden in December and February when Merkl was financially hard pressed, the bank decided that the notes should be that of Merkl and no co-signers were required. This inconsistency is further heightened by the fact that Mrs. Sentel signed the notes. She was not an officer, director or stockholder of the corporation. What was the function of her signing the note? It obviously had to be to hold her personally liable and that is consistent with the testimony of the bank that the notes were to be personal; if it was to be solely a corporate note, her name would not appear. These facts adequately support the trial court finding,

which was basically a credibility issue, that the notes were intended to be and were in fact personal notes of the Sentels and Dr. Kendall.

The accommodation argument as raised was basically that there was no consideration. Technically, the defendants are not accommodation parties. Under the Illinois Commercial Code, "an accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." (See Sec. 3—415, Ill. Commercial Code, Ch. 26, 1965 Ill. Rev. Stat.) The Code further provides that the party accommodated cannot sue the accommodation party.

■■ The Sentels and Dr. Kendall do not fall into this definition—they did not lend their names to another party to the note. The accommodation allegedly was to the Plaintiff bank to remove the overline of credit; however, the Plaintiff bank was not "another party" to that note to whom their names were lent and therefore without the provisions of that Section. There was no error in the dismissal of the affirmative defense.

■■ Error is also assigned to the trial court in the failure to admit certain testimony. Offers of proof were made and upon review of these offers, it cannot be said that the testimony sought to be introduced would change the outcome of this suit and therefore any error in that regard would have to be regarded as harmless.

Accordingly, the judgments in favor of the Plaintiff bank against B. G. Sentel and H. E. Kendall are affirmed. The judgment in favor of defendant Maxine Sentel against Plaintiff State Bank of Arthur is reversed and judgment entered here in favor of the Plaintiff and against the Defendant Maxine Sentel in the sum of $68,950, together with interest at the statutory rate from August 7, 1967—the date of the original judgment.

Affirmed in part; reversed in part, with judgment here.

CRAVEN, P. J., and SIMKINS, J., concur.