RICHARD L. SCHWARZWALDER, Plaintiff-Appellee, *v.* ALEX J. WAITKOSS, Defendant-Appellant.

Third District   No. 81-196

Opinion filed November 5, 1981.

Allan E. Lapidus and Edward C. Jepson, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellant.

Bruce Falk, of Codo, Bonds & Zumstein, P. C., of Joliet, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The defendant, Alex J. Waitkoss, appeals from the judgment entered in favor of the plaintiff, Richard Schwarzwalder, an assignee of the original obligee, Community Bank of Galesburg (C.B.G.), on the plaintiff's action to collect the arrearage owing on a note of indebtedness executed by the defendant. The issue raised is whether the circuit court's finding that the defendant was personally liable was contrary to the manifest weight of the evidence where the defendant contended he signed the note in a representative capacity only.

In 1977, the defendant was a one-sixth shareholder in United Energies, Inc. (U.E.), a corporation which owned mineral rights and which was involved in coal mining. Other U.E. shareholders included Ernest Huls and Ernest Streigel. Huls also served as the chairman of C.B.G., of which he was the major shareholder. In January, 1977, Huls approached the plaintiff, who was then president of C.B.G., and inquired about a loan to U.E. to be used to purchase a coal washer/crusher. The plaintiff

testified that he was hesitant to extend credit to U.E. because of Huls' dual position with both the bank and U.E. Apparently nothing resulted from this inquiry, because, at about the same time, Huls and Streigel approached the defendant in search of the necessary funds to purchase the equipment for U.E. After meeting with them, the defendant agreed to execute a note to C.B.G. on behalf of U.E. Although he received no written authorization, the defendant believed that he was to sign the note in his representative capacity only and that the note would be solely a corporate obligation of U.E. In fact, he received the impression from Huls that all U.E. shareholders were to sign the note. Prior to the execution of the note, C.B.G. requested and received the defendant's personal financial statement.

On January 18, 1977, the defendant executed a one-year note for the principal sum of $40,000 at an interest rate of 8½ percent. At this time, the defendant had no discussions with the plaintiff or any other C.B.G. official, other than Huls, regarding the loan. The defendant signed the note in two places:

> "I (we) Hereby Warrant and Certify that the proceeds of this loan will be used solely for business purposes only as follows: For construction of recycling plant (washer/crusher) on behalf of United Energies, Inc. at West Frankfort, Illinois.

| Date | Signature | s/ Alex J. Waitkoss |
| --- | --- | --- |
|  |  | Signature |

By executing this instrument, the undersigned agrees to all terms and provisions and acknowledges the receipt of a completely filled in copy prior to execution thereof.

Phone  (312) 896-1916        Soc. Sec. No. 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

| Address | United Energies, Inc. | s/ Alex J. Waitkoss |
| --- | --- | --- |
|  | c/o Post Office Box 384 | Signature |
|  | 404 South Logan Street |  |

| West Frankfort | Illinois | 62896 | NOT NEGOTIABLE" |
| --- | --- | --- | --- |
| City | State | Zip Code | Signature |

Upon signing the note, which he considered to be an obligation of U.E., the defendant mailed it to either Huls or Streigel. C.B.G. applied the loan proceeds to an account held by U.E. and Carbon Energies, a partnership related to U.E. At no time did the defendant have direct access to the funds contained in that account. In an unrelated transaction, C.B.G. also extended credit to Carbon Energies in 1977 which was guaranteed by

U.E. As with the defendant, C.B.G. required a financial statement from Carbon Energies before granting its loan.

As the note signed by the defendant approached maturity, the plaintiff, acting as president of C.B.G., sent to the defendant a renewal note which was intended to replace the original note upon payment of the interest owing. The plaintiff testified that at no time did he seek payment from U.E. because he considered the note to be the defendant's personal obligation. Upon receiving the second note, the defendant requested that U.E. pay the entire amount owing, but he was informed by Huls that U.E. was without sufficient funds to pay either the principal or interest and that the note must be renewed. Huls told the defendant that if he were to pay the interest owing and sign the renewal note, U.E. would reimburse him. So believing, the defendant paid the interest and on January 14, 1978, executed the renewal note, which contained the identical terms as those of the first note. As with the first note, the defendant affixed his signature beneath the recital of the purpose for the loan and at the end of the note immediately to the right of U.E.'s name and address. This time, the defendant also signed his name in a box located at the top of the note on the line indicating "Signature of Borrower." Following the renewal of the obligation, the defendant requested, but did not receive, reimbursement from U.E. for interest paid. As with the previous note, the defendant discussed the terms with neither the plaintiff nor any other bank official except Huls.

Then in December 1978, the plaintiff, Huls, and a third C.B.G. shareholder, James Franks, received an offer to sell their ownership interests. As one condition of the stock transfer, the purchasers required that the sellers remove certain loans from C.B.G.'s assets, including the note executed by the defendant, which was referred to as the "United Energies" loan.

The plaintiff accepted the offer to sell on January 8, 1979, and on that day the C.B.G. board passed a resolution requiring Huls to effect collection of so-called "insider" loans. The resolution denominated the renewal note as being of this type and referred to it as "United Energies, Inc. #10281." A letter sent by the plaintiff which accompanied the resolution, as well as a second letter, also referred to the note in issue as the "United Energies, Inc." or "United Energies" loan. As part of the stock transfer agreement, the sellers entered into an agreement in which Huls would indemnify the plaintiff and Franks for any loss incurred due to the noncollection of any "insider" loans. On November 30, 1979, C.B.G. assigned the renewal note, which was still unpaid, to the plaintiff, who brought the instant action against the defendant.

Following the presentation of the evidence, the circuit court found that because of the proximity of the name United Energies, Inc., to the

340

defendant's signature, there existed "some indication" that U.E. was the defendant's principal. Nevertheless, after examining the extrinsic evidence, the court concluded that the immediate parties to the loan did not intend the obligation to be a corporate one and thus, held that the defendant was personally obligated on the debt.

On appeal the defendant contends that the court correctly declared the renewal note to be ambiguous on whether U.E. was the defendant's principal, but argues that the manifest weight of the evidence supports a contrary finding that the immediate parties to the note had an agreement that the debt was to be a corporate obligation solely.

The rules governing the effect of an agent's signature on an instrument are located in section 3—403 of the Illinois Uniform Commercial Code, which provides:

"(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity." Ill. Rev. Stat. 1979, ch. 26, par. 3—403.

Section 3—403 incorporates the common law rule which provided that unless there is something on the face of an instrument or in the manner of its signature so as to create ambiguity or uncertainty, parol evidence is inadmissible to alter the presumption that a person signing the instrument is personally liable thereon. For this reason, section 3—403(2)(a) makes no provision for the admission of parol evidence where the instrument neither names the person represented nor shows that the signator signed in a representative capacity. However, where the note either names the representative but fails to disclose his representative capacity or where the signator signs a representative capacity but fails to disclose the identity of the principal, section 3—403(2)(b) admits parol evidence to overcome the presumption that the signator signed the note in

his individual capacity only, but only where the action is between the immediate or original parties to the note. Where parol evidence is admitted, the person attempting to prove that the signature was made in a representative capacity assumes the burden of persuasion. *Rotuba Extruders, Inc. v. Ceppos* (1978), 46 N.Y.2d 223, 385 N.E.2d 1068.

■■ As for the first prerequisite in the case at bar, neither party disputes the status of the plaintiff as an immediate party to the note by virtue of his position as president of C.B.G. at the time the defendant executed both notes. The second prerequisite is less certain. Upon signing the note, the defendant clearly did not reveal any representative capacity, such as by signing "Alex J. Waitkoss, agent." (See Ill. Ann. Stat., ch. 26, par. 3—403, Uniform Commercial Code Comments, at 224-25 (Smith-Hurd 1963); *Wolfram v. Halloway* (1977), 46 Ill. App. 3d 1045, 361 N.E.2d 587; *Uptown Federal Savings & Loan Association v. Collins* (1969), 105 Ill. App. 2d 459, 245 N.E.2d 521.) Thus, the issue is whether the two note references to U.E. sufficiently named the person or organization represented by the signator to enable the court to admit extrinsic evidence to rebut the presumption of individual liability. Neither section 3—403 nor the case law specifically states what is required for the instrument to name the person represented by the signator. (See 97 A.L.R.3d 798, 815 (1980); 2 R. Anderson, Uniform Commercial Code §3—403:6-8 (1971).) Although the facts in the instant case are not as clear as in *J. P. Sivertson & Co. v. Lolmaugh* (1978), 63 Ill. App. 3d 724, 380 N.E.2d 520, where the signator signed the initials "L.T.G.De." immediately above his signature (see also Ill. Ann. Stat. ch. 26, par. 3—403, Uniform Commercial Code Comments, n.3(e), at 224 (Smith-Hurd 1963)), we believe the circuit court did not err in finding that the two references to U.E. in the notes presented some indication that the defendant might have signed them in a representative capacity for U.E. (See, *e.g.*, *Rotuba Extruders, Inc. v. Ceppos* (1978), 46 N.Y.2d 223, 385 N.E.2d 1068; *Wood Press, Inc. v. Eisen* (1978), 157 N.J. Super. 57, 384 A.2d 538; *Citibank Eastern, N.A. v. Minbiole* (1975), 50 App. Div. 2d 1052, 377 N.Y.S.2d 727; *Geer v. Farquhar* (1974), 270 Or. 642, 528 P.2d 1335.) Nonetheless, we concur in the circuit court's finding that an examination of the extrinsic evidence failed to sustain the defendant's burden to " 'establish' an agreement, understanding or course of dealing" between the immediate parties so as to overcome the presumption of personal liability. *Rotuba Extruders, Inc. v. Ceppos* (1978), 46 N.Y.2d 223, 229, 385 N.E.2d 1068, 1071.

■■ It is not sufficient merely for an appellant to select certain evidence to support his contention that the trial court's judgment was erroneous. For a reviewing court to reverse a trial court's finding of facts, the appellant must demonstrate that the ruling was contrary to the manifest weight of the evidence. (*Thomas v. Le Burkian* (1973), 10 Ill. App. 3d 742, 295 N.E.2d 313.) This the defendant is clearly unable to do. First, both parties

admit that, as between the president of C.B.G., who issued the notes, and the defendant, no direct agreement existed which indicated an intention that the defendant's signature was to be made in a representative capacity. They held not a single discussion on this question. The defendant contends, however, that Huls, who was then chairman of C.B.G., told the defendant that the loan would be used on "behalf" of U.E. Based on this and similar conversations, the defendant assumed that his signature would only obligate the corporation. However the defendant may have interpreted this and other statements made by Huls, we find his conclusion to be unsupported by the evidence and to amount to nothing more than a "self-serving allegation of the signer's subjective intent to sign as a representative," which is insufficient to alter the presumption of personal liability. (*Rotuba Extruders, Inc. v. Ceppos* (1978), 46 N.Y.2d 223, 229, 385 N.E.2d 1068, 1071.) Although the defendant testified that Huls continued to claim that the loan was for the benefit of U.E., the defendant failed to corroborate a single conversation. The court did not exceed the bounds of its discretion in giving little weight to this evidence. Moreover, to say that the proceeds of the loan were to go to the corporation, of which the defendant was a one-sixth shareholder, does not lead to the inevitable conclusion that the defendant signed the notes in a representative capacity. The assumption of personal liability for loans made to closely held corporations by one who has a direct stake in its operation is not an uncommon business practice and may even be the established business custom. (See *State Bank v. Sentel* (1973), 10 Ill. App. 3d 86, 293 N.E.2d 444.) For this reason, the fact that the loan proceeds were placed in U.E.'s joint bank account was not significantly probative of the issue of the defendant's representative capacity. Likewise, the plaintiff's letters and the C.B.G. board resolution which referred to the renewal note as a U.E. loan fail to persuade us that an agreement or understanding between the bank and the defendant existed which established that defendant signed only in a representative capacity. In one respect the note did evince a U.E. loan because the proceeds were placed in U.E.'s account. Yet, as we have said, that does not necessarily conflict with the defendant's individual liability. Clearly, however, U.E. was obligated to reimburse defendant.

Accordingly, we rule that the circuit court's finding of the defendant's personal liability on the renewal note was not contrary to the manifest weight of the evidence. For the foregoing reasons, we affirm the judgment of the Circuit Court of Will County.

Affirmed.

STOUDER and BARRY, JJ., concur.