RECREATION SERVICES, INC. DEFINED BENEFIT PLAN, Plaintiff,

v.

UTAH MORTGAGE COMPANY, a Michigan corporation, and Harvey M. Aidem, Defendants.

No. 89 C 3295.

United States District Court, N.D. Illinois, E.D.

April 19, 1990.

Edwin R. McCullough, Chicago, Ill., for plaintiff.

Michael J. Koenigsknecht, Brien A. Bosch, Gardner, Carton & Douglas, Chicago, Ill., for defendants.

## MEMORANDUM OPINION/FINDINGS OF FACT AND CONCLUSIONS OF LAW

BRIAN BARNETT DUFF, District Judge.

This suit came before this court for trial without a jury on January 29–31, 1990, and for a hearing on questions relating to this court's jurisdiction on March 15, 1990. The court has heard the evidence and has considered the testimony, exhibits, memoranda of law, and arguments of counsel. The court also has reviewed the motion of Utah Mortgage Company and Harvey Aidem to reconsider its pre-trial ruling barring Aidem from testifying in this action and a self-styled "Offer of Proof" as to Aidem's testimony. This court will rule on the motion to reconsider first, then deliver its findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.Pro.

### Motion to Reconsider

The court heard considerable argument in open court on the motion of Recreation Services, Inc. Defined Benefit Plan (hereafter the "Plan") for sanctions under Rule 37 against Utah Mortgage and Aidem for Aidem's failure to appear at a deposition on January 26, 1990. The court will not repeat those arguments here, nor restate its reasons for barring Aidem from testifying at trial. The defendants' written motion reiterates the central arguments which the court has rejected already, and raises new arguments that should have been made previously, but were not.

■ Usually the court would deny such a motion and discuss it no further. The court is obliged, however, to note two disturbing aspects of the defendants' motion and the proffer which accompanies it. First, the written motion mischaracterizes the record in this proceeding. The court reviewed the docket of this proceeding in the company of the parties, and that docket shows that the court has sanctioned the defendants on numerous occasions for their failure to cooperate with discovery. The defendants' suggestion that the court's bar of Aidem's testimony is disproportionate to his conduct ignores the pattern of the defendants' obstreperous conduct.

The court's second observation is that the defendants' proffer suggests testimony that would take much more time to present than the defendants had represented previously to the court. That the court believed that Aidem would not testify at length had no bearing on the sanction imposed on the defendants. Nevertheless, the defendants' proffer suggests that the defendants may have misrepresented the length of Aidem's testimony to the court—a fault which, regrettably, is common among trial attorneys. The court trusts that counsel for the defendants will be more careful in future representations to any court, including this one.

*Findings of Fact*

Now fully advised in this matter, the full trial having concluded, the court finds these facts:

1. The Plan is an employee benefit plan of Recreation Services, Inc. Recreation Services established the Plan pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. (1982). The trustees of the Plan are Larry and Patricia Donovan. At the time that the Plan filed this suit, none of the qualified participants in the Plan was a citizen of the State of Michigan.

2. Utah Mortgage is a Michigan corporation which has its office and principal place of business in Michigan. Aidem is a Michigan resident. Aidem conducted all of Utah Mortgage's business, and was its president and sole director. The State of Michigan has licensed Aidem as a mortgage broker.

3. The Plan and Utah Mortgage have had a continuous business relationship since 1981. Aidem and Larry Donovan also have conducted personal business between themselves.

4. On May 24, 1985, Utah Mortgage assigned a promissory note from Phoenix Homes, Inc. to the Plan. The principal amount of the note was $30,000.00. Utah Mortgage also assigned to the Plan its interest in a guarantee from Phoenix Homes and a mortgage on a parcel of real estate located in Michigan. The guarantee and the mortgage secured the note. The Plan paid $30,000.00 to Utah Mortgage in consideration for the assignment of the note, the guarantee, and the mortgage. Under the Assignment, Utah Mortgage was to pass all funds which it received from Phoenix Homes to the Plan, less a $3.00 handling fee.

5. On August 5, 1985, Utah Mortgage received and deposited in its bank account $45,000.00 from Phoenix Homes. That same day Utah Mortgage released the mortgage which secured the note described in Finding 4 above. Utah Mortgage did not inform the Plan of its action. An accountant for Recreation Services, John Ridge, testified that he had examined the books and records of Utah Mortgage for the period August 1985 through December 1986. He could not find any record of Utah Mortgage's receipt of any payments of interest or principal from Phoenix Homes following the August 5, 1985 transaction.

6. On December 20, 1988, Utah Mortgage tendered a check to the Plan dated December 23, 1988 in the amount of $39,-494.00. The check was drawn on an account titled "Utah Mortgage Co. Escrow Account" at the First of America Bank—Southeast Michigan, N.A. The check bore Aidem's signature, but did not disclose that Aidem signed it on behalf of Utah Mortgage. An attorney for the Plan, Stuart Snider, understood Utah Mortgage's role as collection agent pursuant to the Assignment agreement. Aidem in his individual capacity never indicated to the Plan that

his role in the transaction was as anything other than as a representative of Utah Mortgage.

7. On December 23, 1988, Snider presented the check to First of America. The bank informed Snider that there were insufficient funds in the Escrow Account to pay the check.

8. Aidem knew at the time he signed the check and on December 23, 1988 that there were insufficient funds in the Escrow Account to pay the check.

9. The Plan deposited the check in Harris Bank—Naperville on April 4, 1989. When the check reached First of America, the bank dishonored it, stamping "ACCOUNT CLOSED" across the face of the check.

10. Neither Aidem nor Utah Mortgage notified the Plan that they had closed the Escrow Account.

11. The Plan owns the check and produced it at trial.

*Conclusions of Law*

█ The Plan claims that this court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332 (1982). An employee benefit plan established pursuant to ERISA is held in trust for the benefit of eligible employees. See 29 U.S.C. § 1103(a). Generally, for purposes of this court's jurisdiction under 28 U.S.C. § 1332, the citizenship of such a plan depends on the citizenship of participants in the plan. *See Navarro Savings Assn. v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980); *Xaros v. U.S. Fidelity and Guar. Co.,* 820 F.2d 1176, 1181 (11th Cir.1987).

█ The Plan did not allege the citizenship of its participants in its amended complaint. Had the court learned of this fault in the Plan's pleading before trial, the court would have dismissed this case for lack of jurisdiction. See Rule 12(h)(3). The court discovered the Plan's error only after trial. The court thus alerted the parties to the mistake and held hearings on the Plan's citizenship. Subsequent to this hearing the Plan proposed additional findings of fact and conclusions of law in the interest of correcting its mistake. The court will treat the Plan's tender of these additional findings as a motion to amend the Plan's amended complaint, pursuant to Rule 15; since neither Aidem nor Utah Mortgage has objected to the Plan's tender, the court will allow it as an amendment to the Plan's complaint. See 28 U.S.C. § 1653 (allowing amendment to correct defective pleading of jurisdiction); *Int'l Brotherhood of Boilermakers, Etc. v. Local Lodge D354,* 897 F.2d 1400, 1402 & n. 3 (7th Cir. Mar. 15, 1990) (sensible to allow amendment of jurisdictional allegations where defendant claims no harm from amendment). Since none of the Plan's beneficiaries are citizens of Michigan, the state of which both Aidem and Utah Mortgage are citizens, and as the amount in controversy exceeds $10,000, this court had jurisdiction over this case under 28 U.S.C. § 1332 at the time the Plan filed it in April 1989. See Findings 1–2, 6.

This court addressed the merits of this case once before in *Recreation Services Ben. Plan v. Utah Mortg. Co.,* 720 F.Supp. 124 (N.D.Ill.1989). There, as here, the parties agreed that Illinois law governs this dispute—specifically, the Illinois Commercial Code—Commercial Paper, Ill.Rev.Stat. ch. 26, ¶¶ 3–101 et seq. (1987). In the earlier ruling, this court denied the Plan's motion for judgment on the pleadings pursuant to *id.,* ¶ 3–307(2), because the Plan had not produced the check to the court, and because Aidem and Utah Mortgage raised the defense of lack of consideration. See *Recreation Services,* 720 F.Supp. at 125.

[4] The Plan produced the check at trial, see Finding 11, and thus has made out a prima facie case for recovering from Aidem and Utah Mortgage under ¶ 3–307(2). The focus of the court's inquiry thus shifts to Aidem and Utah Mortgage, who have the burden of proving any defense. See *id.* As they did in opposing the Plan's earlier motion, Aidem and Utah Mortgage have raised the defense of lack of consideration under ¶ 3–408. That statute provides in part: "Want or failure of consideration is a defense against any person not having the rights of a holder in due course (Paragraph 3–305), except that no consideration is necessary for an instrument or obligation

thereon given in payment of or as security for an antecedent obligation of any kind."

The parties agree that the Plan was not a holder in due course under ¶ 3–305. Aidem and Utah Mortgage argue that they received no consideration for tendering the check to the Plan, since the only entity owing an obligation to the Plan was Phoenix Homes, by virtue of Phoenix's note and guarantee. See Findings 4–5. The Plan submits that Aidem and Utah Mortgage are wrong. The Plan has presented evidence that Phoenix Homes tendered payment for its debt under the note on August 5, 1985, as indicated by Aidem's release of the mortgage securing the note and the absence of any record of Utah Mortgage's receipt of principal or interest payments after that date. See Finding 5. If in fact Phoenix had paid Utah Mortgage in full for the note in August 1985, at that point Utah Mortgage would have owed the Plan payment in full, by virtue of the parties' assignment agreement. See Finding 4. This obligation would have been an antecedent obligation within the meaning of ¶ 3–408, and thus Aidem and Utah Mortgage would not be able to establish a defense under ¶ 3–408.

■ Aidem and Utah Mortgage have the burden of establishing a defense of lack of consideration under Illinois law. Such evidence "must be of a very clear and cogent nature." See *Levin v. 37th St. Drug & Liquors, Inc.*, 103 Ill.App.2d 248, 253, 243 N.E.2d 504, 506 (1968). Aidem and Utah Mortgage have not carried their burden on this defense in this case. Their witnesses did not explain why Aidem contemporaneously released the mortgage securing the Phoenix note upon receiving in excess of the principal amount of the note, and why Ridge could not find any record of Utah Mortgage's receipt of principal and interest payments allegedly sent to Utah Mortgage after Aidem had discharged the mortgage. When a party contests a defense of lack of consideration and posits an antecedent obligation, it is up to the party asserting the

defense to prove that no such obligation exists. See *First National Bank of Elgin v. Achilli*, 14 Ill.App.3d 1, 7, 301 N.E.2d 739, 743 (1973). Aidem and Utah Mortgage have offered no evidence rebutting the Plan's suggestion of an antecedent obligation arising by virtue of Utah Mortgage's receipt of funds in August 1985. Aidem and Utah Mortgage thus have not made out a defense under ¶ 3–408.

■ Aidem argues that even if Utah Mortgage is liable for the check, he is not. Paragraph 3–403(2)(b) of the Code provides: "An authorized representative who signs his own name to an instrument except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity...." The check named Utah Mortgage as the entity whom Aidem represented; Aidem did not indicate that he signed the check as Utah Mortgage's representative. See Finding 6. Aidem thus bears the burden of persuading this court that he signed the check in his representative capacity only. See *Schwarzwalder v. Waitkoss*, 101 Ill. App.3d 337, 341, 57 Ill.Dec. 83, 86, 428 N.E.2d 633, 636 (1981); *Millstadt Drilling, Inc. v. So. Ill. Explor. Co.*, 135 Ill.App.3d 85, 91, 90 Ill.Dec. 72, 76, 481 N.E.2d 872, 876 (1985).

■ As noted in Finding 6, an agent for the Plan, Stuart Snider, understood that Utah Mortgage, and not Aidem personally, was liable to the Plan for any payments received from Phoenix Homes in the parties' arrangement. The Plan understood this from the written documents which evidenced the transaction, and Aidem never told Snider anything different when Aidem tendered the Utah Mortgage check to the plan. The court thus holds that Aidem has carried his burden in showing that the Plan understood when it received the check that it was Utah Mortgage's, not Aidem's own.*

---

* The Plan has not asked the court to pierce Utah Mortgage's corporate veil, and to hold Aidem liable for Utah Mortgage's obligations. The

Plan's sole argument to date is that Aidem and Utah Mortgage were jointly liable to the Plan by virtue of what appears on the check.

The Plan last seeks costs and expenses, including attorneys fees and interest, for prosecuting this action. Paragraph 3–806 of Illinois's version of the Code provides in part:

> Any person who issues a check ... which is not honored upon presentment because the drawer does not have an account with the drawee, or because the drawer does not have sufficient funds in his account, ... shall be liable in the amount of $10, or for all costs and expenses, including reasonable attorney's fees, incurred by any person in connection with the collection of the amount for which such check ... was written, whichever is greater, and shall be liable for interest upon the amount of such check ... at the rate [of 9% per annum].

This court has found that there were insufficient funds in the Utah Mortgage Escrow Account to pay the check in dispute here, and that upon presentment the account was closed. See Findings 8–9. By the terms of the statute, the Plan is entitled to costs and expenses, including attorneys fees and interest. Utah Mortgage contends that this court should not allow attorneys fees and costs in this case, as it raised a defense to the Plan's claims in good faith. Utah Mortgage fails to indicate, however, which statutes or Illinois decisions allow a good faith defense to ¶ 3–408. Since this court presides over this case solely by its diversity jurisdiction, the court hesitates to create exceptions to Illinois statutes absent some argument that the Illinois Supreme Court would concur.

The court enters judgment in favor of Aidem and against the Plan on the Plan's complaint, as amended. The court enters judgment against Utah Mortgage and in favor of the Plan in the amount of $39,-494.00, plus interest at the statutory rate. The court orders the Plan to submit a verified petition of costs and expenses, including attorneys fees.