434 So.2d 1299 (1983)
CITY BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
Charles C. WHITE, Defendant-Appellant.
No. 83-147.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
*1300 Seago, Patrick & Carmichael, John E. Seago, Baton Rouge, for defendant-appellant.
Armentor & Wattigny, Minos H. Armentor, New Iberia, for plaintiff-appellee.
Before STOKER, DOUCET and KNOLL, JJ.
STOKER, Judge.
The issue in this case is whether defendant is bound on a promissory note made in favor of plaintiff bank, and if not, whether the bank may recover some amount on another basis.
Plaintiff, City Bank & Trust Company, sued defendant, Charles C. White, to enforce a demand promissory note purportedly signed as maker by Charles C. White, and executed in favor of City Bank & Trust Company as payee in the amount of $12,864.01. Charles C. White also signed the back of the note, apparently as endorser. Charles C. White answered plaintiff's allegations admitting his signature on the note in the place normally reserved for the signature of the maker of a note. However, he denied owing the amount sued for on the grounds of lack of consideration, mistake, fraud, misrepresentation, duress, or material alteration. Defendant further reconvened asking for damages. Defendant withdrew his reconventional demand at the close of the evidence.
The issues on appeal are:
(1) Whether or not defendant intended to obligate himself as principal obligor on the note.
(2) If not, whether or not defendant can be held secondarily liable as endorser.
(3) If defendant is potentially liable as endorser, can he raise the defense of lack of consideration to the maker of the note?
(4) Whether or not, on the record we have before us, this Court can award *1301 an amount to plaintiff based on the doctrine of unjust enrichment.
At the outset, we must note that issues two, three and four were neither argued in the trial court nor briefed on appeal. Although the trial court found that the endorsement by Charles C. White on the back of the note was an endorsement in blank, the trial court based its judgment on the finding that the signature of Charles C. White on the front of the note obligated him personally as maker. Accordingly, the trial court granted judgment for the plaintiff in the amount of $11,303.22, the balance due on the note. Defendant appealed from this adverse judgment.
Defendant-appellant assigned three specifications of error in his brief filed with this Court. The principal error assigned related to the question of whether defendant is liable on the note sued upon. The two other errors complained of consist of (1) the trial court's failure to issue orders compelling appellee bank to answer interrogatories which appellant contends were insufficiently or only vaguely answered and (2) the trial court's failure to grant a continuance. We find no merit to the alleged errors relating to the interrogatories and continuance, especially in view of our findings and holding in the appeal.
We affirm and amend the judgment of the trial court and make the following findings: (1) The weight of the evidence, including the testimony of plaintiff's own witness, the bank officer who dealt with Charles C. White, shows that defendant did not obligate himself personally as maker of the note; (2) The defendant obligated himself personally as endorser; (3) The evidence shows lack of consideration for the note; (4) Judgment for plaintiff is appropriate based on the doctrine of unjust enrichment.

DEFENDANT IS NOT MAKER
The note sued upon is numbered 30481, dated January 12, 1978, and in the amount of $12,864.01. (Some of the proceeds of this note were used by the plaintiff to pay off a prior note, # 26442, executed December 20, 1976.) The balance sued for is $11,303.22. The back of the note bears a notation reading: "Secured by Real Estate Mtr. Note dated 8-22-75 White's Tire Co." This notation has a line drawn through it and written underneath is the word "unsecured." Underneath that appears the signature of Charles C. White, defendant. Defendant White admitted that his signature on the note, both in the space reserved for the maker and on the back, are genuine.
LSA-R.S. 10:3-307 is quoted in pertinent part as follows:
"§ 3-307. Burden of establishing signature, defenses and due course
* * * * * *
"(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless defendant establishes a defense."
LSA-R.S. 10:3-403 provides as follows:
"§ 3-403. Signature by authorized representative
(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.
(2) An authorized representative who signs his own name to an instrument
(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.
(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.
Added by Acts 1974, No. 92, § 1, eff. Jan. 1, 1975."
*1302 This suit is between the immediate parties to the note on which this suit is based. The term "immediate parties" is given construction by way of illustration in Solar Supply, Inc. v. Camp's Heating and Air Conditioning, Inc., 408 So.2d 968 (La.App. 2d Cir.1981). For further meaning of the term see 11 Am.Jur.2d, Bills & Notes, § 284 (1963).
In considering in pari materia the two subparagraphs of LSA-R.S. 10:3-403(2) quoted above, a reasonable interpretation might be that where, as here, a person simply signs his own name without more, he may not introduce evidence to show that it was "otherwise established between the immediate parties" that the party signing did so solely in a representative capacity. Nevertheless, even if this is so, the plaintiff's own evidence (without any contrary evidence) unequivocably establishes that the defendant did not intend to bind himself individually and personally, but intended to sign in a representative capacity for White Tire Company, of which he was president.
As we shall show, all the evidence, except the note itself, supports the fact that neither defendant nor the plaintiff bank intended the note sued upon to be defendant's personal note. Despite the apparent inflexible thrust of Subparagraph (a) of LSA-R.S. 10:3-403(2), we hold that it would be unconscionable to hold defendant personally responsible when plaintiff's evidence alone proves that it was not the intention that defendant be personally bound. It may be that the appearance of the name "White Tire Company" on the back of the note throws this case under Subparagraph (b) of the statute and the application given it in the Solar case cited above. However, we do not deem it necessary to ground our holding on such a finding.
Plaintiff called as one of its witnesses a former employee and loan officer, Randal Sergeant. While employed at the plaintiff bank, Sergeant dealt with defendant in defendant's two separate capacities, defendant's personal capacity and in defendant's capacity as president of White Tire Company.
It appears that defendant had executed a prior promissory note dated December 20, 1976 which is not sued upon in this suit but which does figure in the facts before us. The note of December 20, 1976 was numbered 26442 and was for the amount of $19,399.50. This note (# 26442) was intended to be posted to the account of White Tire Company. For some unaccountable reason the proceeds of the loan were not posted to the proper account. Instead, the proceeds were debited to the personal account of defendant Charles C. White. However, the evidence does not show that White received the benefit of more than $14,410.41.
When note # 30481, the note sued upon in this matter, was executed on January 12, 1978, a portion of the proceeds was used to pay the balance owing on note # 26442.
Note # 26442 was handled in a similar fashion as note # 30481 as will now be explained.
Note # 26442 bears an inscription on its back virtually the same as the inscription on the note sued upon, except that there is no line-out of any part of the notation, and the word "Unsecured" does not appear on note # 26442. Like note # 30481, Charles C. White's signature appears on the back of # 26442. Sergeant testified that the words "White's Tire Co.," which appear on the back of both of the notes, was a notation by Mr. Sergeant to direct other bank employees to debit the account of White Tire Company. Mr. Sergeant also testified that the employees failed to debit the correct account as to both notes. Mr. Sergeant also testified that although Charles C. White's signature appears on both notes on the line normally reserved for the maker of the notes, it was understood between them that defendant was signing in his capacity as president of White Tire Company.
The testimony of the defendant and Mr. Sergeant, and the documentary evidence presented, show that defendant took part in many transactions consisting of the borrowing of money both for the defendant personally and for White Tire Company through the defendant. Mr. Sergeant was *1303 never questioned, nor did he testify, as to why he felt it was proper to have defendant borrow money on at least two occasions in his representative capacity without such capacity being made clear on the face of the note. It is not clear whether Mr. Sergeant was acting outside the scope of his authority as loan officer. However, it is clear from the testimony of both the defendant and Mr. Sergeant, who was the plaintiff's own witness, that defendant Charles C. White never intended to obligate himself personally as maker, even though his unqualified signature appears on the face of both instruments.
Mr. Sergeant testified he did not line out the notation on the back of note # 30841. He testified that although he knew that Charles White was not obligating himself personally, he had Charles White sign the front of the note without qualifying his signature. Defendant testified that he depended on Mr. Sergeant to inform him of the running balance on his personal ledger sheet, and from time to time he would make partial payments on his numerous personal notes based on Mr. Sergeant's representations to him. Defendant also testified, and Mr. Sergeant again corroborated his testimony, that before signing note # 26442, defendant protested to Mr. Sergeant that he did not think he personally owed the amount represented by the note, i.e., $19,399.50. Mr. Sergeant testified he told defendant to sign the note anyway because it was needed for reasons of bank policy and bank procedure.
Mr. Sergeant made the same representations as to the note sued upon.
The evidence unequivocally shows that Charles C. White depended on Mr. Sergeant for information regarding the balance owed on his account and relied on the representations made by Mr. Sergeant. The plaintiff bank called Mr. Sergeant as its own witness and called defendant on cross-examination. Other than these two witnesses, the only witness called by the bank was another loan officer who had no personal dealings with defendant regarding the note in question. Insofar as defendant's defense of lack of consideration and mistake is concerned, this latter officer's testimony was not relevant.
We conclude that the defendant has shown he did not intend to obligate himself as maker on the note. The plaintiff's witness and representative, Sergeant, corroborates this. The understanding between the parties was that defendant was signing in his representative capacity and not in his personal capacity.
The testimony of Mr. Sergeant reveals a marked ignorance of the legal implications of his actions and of the problems he caused the parties by failing to follow normal banking procedures and safeguards. However, plaintiff did not attempt to show that Mr. Sergeant violated instructions of bank officers or violated the rules of the bank regarding the manner in which notes are prepared. Furthermore, the plaintiff must vouch for its witnesses' veracity. Hanover Insurance Company v. Oregeron, 206 So.2d 814 (La.App. 4th Cir.1968); Guillot v. Hardware Dealers Mutual Fire Insurance Company, 229 So.2d 358 (La.App. 4th Cir.1969).
For the reasons given above we hold that plaintiff is not bound personally as maker of the note sued upon. His signature was meant to be given in his representative capacity.

DEFENDANT'S LIABILITY IS AS AN ENDORSER
The trial court found that the signature of Charles C. White on the back of the instrument was an endorsement. In view of our finding that defendant signed the note on the front in his representative capacity, the trial court's finding that defendant was an endorser is correct. We quote the pertinent statutes from LSA-R.S., Title 10 as follows:
"§ 3-402. Signature in ambiguous capacity
Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement.
Added by Acts 1974, No. 92, § 1, eff. Jan. 1, 1975."
"§ 3-414. Contract of indorser; order of liability

*1304 (1) Unless the indorsement otherwise specifies, as by such words as "without recourse", every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so.
(2) Unless they otherwise agree indorsers are liable to one another in the order in which they indorse, which is presumed to be the order in which their signatures appear on the instrument.
Added by Acts 1974, No. 92, § 1, eff. Jan. 1, 1975."
An endorser agrees he will pay the instrument to a holder according to its tenor at the time of his endorsement. (The terms set out on the front of the note sued upon in this matter waive presentment, notice of dishonor and protest.) The parties did not raise the issue of defendant's endorsement as a basis of liability but concentrated on his liability as maker. Nevertheless, we may consider liability on this basis. LSA-C.C.P. art. 2164. On the basis of the record, we hold that defendant is liable on the note based upon his endorsement, subject to any valid defenses he may raise. As explained below we find that defendant has established a valid defense.

DEFENDANT HAS RAISED A VALID DEFENSE
Although the situation is not specifically addressed in the Commercial Law, the defendant, as endorser, may raise any defenses the maker of the note in question might have raised, including lack of consideration. LSA-C.C. art. 2098. See also 11 Am.Jur.2d Bills and Notes, § 659 (1963), and LSA-R.S. 10:3-307(2).
Again, we quote from the pertinent statutes set forth in LSA-R.S. Title 10, as follows:
"§ 3-306. Rights of one not holder in due course
Unless he has the rights of a holder in due course any person takes the instrument subject to
(a) all valid claims to it on the part of any person; and
(b) all defenses of any party which would be available in an action on a simple contract; and
(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose; and
(d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive indorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party.
Added by Acts 1974, No. 92, § 1, eff. Jan. 1, 1975."
* * * * * *
"§ 3-408. Consideration
Want or failure of consideration is a defense as against any person not having the rights of a holder in due course, except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind. Nothing in this Section shall be taken to displace any statute outside this Title under which a promise is enforceable notwithstanding lack or failure of consideration. Partial failure of consideration is a defense pro tanto whether or not the failure is in an ascertained or liquidated amount.
Added by Acts 1974, No. 92, § 1, eff. Jan. 1, 1975."
Plaintiff has never alleged or asserted that it has the status of holder in due course. Defendant has shown that White Tire Company did not receive the proceeds of the loan from plaintiff represented by the note. The sums due on both notes were debited to the personal account of Charles C. White. There are no allegations that White Tire Company received the benefits or proceeds of the loans made by plaintiff. Inasmuch as we find that the account of Charles C. White was incorrectly debited *1305 with the proceeds of the notes, there was a lack of consideration with reference to White Tire Company. Therefore, the obligation represented by the note sued upon failed and Charles C. White cannot be held liable as endorser.

AN AWARD FOR UNJUST ENRICHMENT IS APPROPRIATE
Although we hold that the note sued upon is invalid for lack of consideration, the defendant received a benefit from having both notes debited to his personal account. Three notes were paid with the proceeds of note # 26442: $12,510.41 on note # 24882; $900.00 on note # 25425; and $1,000.00 on note # 26124. The total amount paid in this manner was $14,410.41. The ledger sheet of City Bank & Trust Company shows that these payments on the notes completed the payoff of the balance of these three notes. Presumably, the notes were canceled and no longer may be enforced by the bank.
For an award to be made based on the doctrine of unjust enrichment, five requisites must exist: an enrichment of the defendant, an impoverishment of the plaintiff, a connection between the enrichment and the impoverishment, an absence of justification or legal cause for the enrichment, and a lack of another remedy at law. Stelly Construction, Inc. v. Richard, 401 So.2d 1214 (La.App. 3rd Cir.1981); Our Lady of the Lake Medical Center v. Cropper, 401 So.2d 403 (La.App. 1st Cir.1981), writ denied 404 So.2d 279 (1981); Kent v. De La Cruz, 400 So.2d 689 (La.App. 4th Cir.1981), writ denied 406 So.2d 609 (La.1981).
Defendant made a number of payments on both notes # 26442 and # 30481. Therefore, although we conclude that plaintiff should have some recovery of the $14,410.41, the sum by which defendant was enriched, plaintiff is not entitled to recover that full amount. Reflecting the various amounts paid by defendant at different times and giving him appropriate credit for such sums presents some difficulty. At the same time, we conclude that some adjustment should be made for the use by defendant of plaintiff's funds. The payments which have been made were made by defendant on notes # 26442 and # 30481.
The apportionment of those payments to principal and interest are of no significance as these notes are not a basis for plaintiff's recovery. Parenthetically, we note that in making an award for unjust enrichment, we do not enforce contract rights, and the amount we award is based upon equitable considerations. In arriving at the amount of recovery to which the plaintiff bank is entitled, all payments made by defendant must be related to the sum of $14,410.41, rather than to the balances in the bank's ledger which were related to the two notes. For this reason, the bank's records with respect to amounts charged to retirement of principal and interest are not valid for our purposes except for the record of individual payments. We recompute the payments on principal and interest using $14,410.41 as a basis but crediting plaintiff on an equitable basis with such interest as it might have earned. For example, on December 31, 1976, defendant made a total payment of $211.37. This was allocated on the bank's ledger sheet as being $158.19 payment on the principal of $19,339.50 and a $53.18 payment on the interest due. Had the interest been computed on a principal of $14,410.41, the interest due would have been $39.62. A total of $171.75 would have been credited against the principal.
The Appendix herein attached is a rescheduling of the payments made by Charles C. White. Credits against principal and interest have been recalculated, beginning with the amount of $14,410.41 and continued up to the last payment date. (Note: The date of the last payment was obliterated on the original copy of the plaintiff's ledger sheet, as entered into evidence. The payment of $548.00 was credited entirely against interest owed on the bank's ledger sheet. The date was determined using the principal balance due on June 7, 1979, according to the bank's payment schedule on the back of note # 30481, and determining the number of days from June 7, 1979, that would have run for $584.00 of interest to have accrued.)
It may be noted that the amount of note # 26442 ($19,339.50) is some $4,929.09 over *1306 the total amount of the three notes that were paid by note # 26442. Further, there is a discrepancy of $2,108.08 between the amount of note # 30481 ($12,864.01) and the balance of note # 26442 ($10,755.92) that was paid by note # 30481. Plaintiff attempted to show that defendant had received those amounts in cash. Their burden of proof was far from carried, however. The ledger sheet does not account for the difference, and defendant denied ever receiving cash at the time he signed the notes. None of the witnesses had personal knowledge of defendant having received such cash. Although the bank's policy was to issue a cashier's check when cash was given in amounts exceeding $1500.00 at the time loans were made, plaintiff failed to produce any canceled checks. Plaintiff's witnesses, the bank officers, were at a loss to explain why their own procedures were not met. Plaintiff has failed to produce the slightest evidence that defendant ever received cash for the amounts referred to above.
In view of the foregoing, we hold that defendant has been unjustly enriched in the amount of $2712.12. Accordingly, we award judgment to plaintiff in that amount. Additionally, because plaintiff would have continued to receive ten per cent interest on the three notes paid by note # 26442, we award interest from the date of the last payment, December 10, 1979, to the date of judgment, in the amount of $733.04.

DECREE
For the foregoing reasons, the judgment of the trial court is amended and plaintiff is awarded $3,445.16, with legal interest from the date of judgment of the trial court, together with all costs incurred in the trial court.
The costs of this appeal are assessed equally to plaintiff-appellee and defendant-appellant.
AMENDED AND AFFIRMED AS AMENDED.

 APPENDIX
 DATE
 OF PAYMENT 1. 2. 3. 4. 5. 6.
Note number 26442,
beginning
December 20, 1976
December 31, 1976 $14,410.41 11 9% $ 39.62 $ 211.37 $ 171.75
March 2, 1976 14,238.61 61 9 217.13 200.00 (17.13)*
March 30, 1977 14,238.61 28 9 116.80* 200.00 83.20
May 3, 1977 14,155.41 34 9 120.32 200.00 79.68
June 16, 1977 14,075.73 74 9 260.40 200.00 (60.40)*
November 8, 1977 14,075.73 145 9 570.65* 8,905.16 8,334.51
December 12, 1977 5,741.22 34 9 48.80 200.00 151.20
 (Note: On January 12, 1978, Note number 26442 was paid by
 Note number 30481. No interest was charged
 between December 12, 1977 and January 12, 1978.)
Note number 30481,
beginning
January 12, 1978
February 20, 1978 5590.02 39 10 60.56 300.00 239.44
April 17, 1978 5350.39 56 10 83.23 300.00 216.77
July 17, 1978 5133.62 91 10 129.77 500.00 370.23
October 11, 1978 4763.39 86 10 113.79 500.00 386.21
December 5, 1978 4377.18 55 10 66.87 250.00 183.13

*1307
December 22, 1978 $ 4194.05 17 10% $ 19.81 $ 250.00 $ 230.19
January 29, 1979 3963.86 38 10 41.84 250.00 208.16
March 27, 1979 3755.70 57 10 59.47 250.00 190.53
April 30, 1979 3565.17 34 10 33.67 250.00 216.33
June 7, 1979 3348.84 38 10 35.35 250.00 214.65
December 10, 1979 3134.19 186 10 161.93 584.00 422.07
FINAL BALANCE $ 2712.12
Column 1.  Principal due, upon which interest charges are calculated.
Column 2.  Number of days between payments. (A 360day year was used in
 calculations.)
Column 3.  Interest rate.
Column 4.  Interest amount due for period. (P × R × T = Interest amount)
Column 5.  Total actual payment made by Charles C. White, principal and interest.
Column 6.  Column 5 minus Column 4. This amount is deducted from Column 1. to
 get new principal balance.
* Column 4. is greater than Column 5. Excess interest due is added to amount due,
 next payment date.