**In re Gary E. HILL, Plaintiff,**

v.

**CARGILL, INC., Defendant.**

**Corrine HILL, Plaintiff,**

v.

**CARGILL, INC., Defendant.**

**Lloyd E. HILL, Plaintiff,**

v.

**CARGILL, INC., Defendant.**

**Harriet G. HILL, Plaintiff,**

v.

**CARGILL, INC., Defendant.**

Civ. Nos. 3–80–430 to 3–80–433; Bankruptcy Nos. 4–79–1175 to 4–79–1178.

United States District Court,
D. Minnesota.

Jan. 26, 1981.

Kenneth Johannson, Crookston, Minn., for plaintiffs.

Robert L. Lowe, Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

RENNER, District Judge.

This matter comes before the Court on appeal from Orders of Bankruptcy Judge Kenneth G. Owens, holding that the above-named Hills are proper candidates for Cargill's petition in involuntary bankruptcy since they are not generally paying their debts as those debts become due. Orders of June 5, 1980. *See* 11 U.S.C. § 303(h). Kenneth Johannson, Esq., appears for the appellants; Robert Lowe, Esq., appears for the appellee.

On October 11, 1979, Cargill filed involuntary bankruptcy petitions against each of

the Hills pursuant to 11 U.S.C. § 303. Lloyd and Harriet Hill contested the petitions, and trial of the issues raised therein was held on April 22, 1980. Gary and Corrine Hill failed to make a timely response to the petitions, and orders for relief were entered against them on November 6, 1979. Thereafter, Gary and Corrine Hill moved to vacate the November 6, 1979, orders. The motions were continued pending resolution of the issues presented· in the Lloyd and Harriet Hill petitions.

On June 5, 1980, judgment was entered against Lloyd and Harriet Hill, and the motions of Gary and Corrine Hill were denied. See Orders of June 5, 1980.

The issue on appeal is whether the Hills are generally paying their debts as those debts become due within the meaning of 11 U.S.C. § 303(h).

### I.

Prior to trial, the parties stipulated (1) that Lloyd and Harriet Hill were indebted to Cargill in the amount of $1,250,000 plus interest, representing the amount they personally guaranteed on the account of Warren Seed and Grain Co.; (2) that the State Bank of Warren, Minnesota, had obtained a judgment against Lloyd Hill in the amount of $106,205 plus $20,000 in attorneys' fees, arising out of a promissory note executed by him to cover debts owed by Warren Seed and Grain Co.; (3) that Peoples State Bank of Warren had obtained a judgment against Lloyd Hill in the amount of $32,000, arising out of debts of Warren Seed and Grain Co. guaranteed by Lloyd Hill or for which he had signed a personal note; (4) that Gary and Corrine Hill were indebted to Cargill in the amount of $1,250,000 together with interest, representing a debt they personally guaranteed on account of Warren Seed and Grain Co.; (5) that the State Bank of Warren obtained judgment against Gary Hill in the amount of $104,300 plus $20,000 in attorneys' fees, arising out of a promissory note executed by him to cover debts of the Warren Seed and Grain Co.; (6) that Peoples State Bank of Warren obtained judgment against Gary Hill in the amount of $32,000, arising out of debts of the Warren Seed and Grain Co. guaranteed by him or for which he had signed a personal note; and (7) that the Hills owed no other debts.

The Hills contend that the requirements of 11 U.S.C. § 303(h) have not been met because they are paying their debts with the exception of the three large debts set forth in the stipulation. They argue that the Cargill debt is now the subject of an appeal to the Minnesota Supreme Court and that all debts are secured by liens and mortgages sufficient to satisfy or reduce the obligations.

### II.

The Bankruptcy Reform Act of 1978, Public Law 95–598, replaced the balance sheet debtor insolvency test with an equity insolvency test. H.Rept.No.95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 321–324, U.S.Code Cong. & Admin.News 1978, 5787; S.Rept.No.95–989 to accompany S. 2266, 95th Cong., 2nd Sess. (1978) p. 34, U.S.Code Cong. & Admin.News 1978, 5787, 5963. The new test focuses on whether a debtor is "generally not paying such debtor's debts as such debts become due." 11 U.S.C. § 303(h).

In the present case, all but the three stipulated debts are being paid. However, all three are large and are not merely being overlooked. Two of the three, those to the banks, are undisputed. While the Cargill debt is the subject of an appeal, it clearly constitutes a claim in the bankruptcy sense. See 11 U.S.C. § 101(4). Cf. Denham v. Shellman Grain Elevator, Inc., 444 F.2d 1376 (5th Cir. 1971). The fact that the debts are fully or partially secured is of no consequence. 11 U.S.C. § 101(4).

Under these circumstances, the only question before the Court is whether the failure to pay these three debts constitutes a failure to pay debts "generally".

It has long been held, under the prior Act, that payment of small current debts, such as claims for rent, groceries, utilities

and other consumer debts[1], cannot be used by a bankrupt to defeat a large creditor's involuntary petition. *See, e. g., Denham v. Shellman Grain Elevator, Inc., supra,* and cases cited therein. Likewise, Congress could not have intended to allow the payment of such bills to bar a large creditor from pursuing its remedies under 11 U.S.C. § 303.

This interpretation of the term "generally" is reinforced by legislative history. The House and Senate bills contained substantially different definitions of the equity test finally adopted by the conference committee. The House Report, *supra,* spoke of a debtor being "generally unable to pay its debts as they mature", while the Senate Report, *supra,* referred to a debtor who was unable to or who "failed to pay a major portion of his debts as they become due."

Title 11, U.S.C. § 303(h), as enacted, deleted all reference to a percentage of debt or number of claimants as reflected in the Senate bill and substituted "generally not paying" for the concept of inability to pay found in both House and Senate versions. The Court agrees with the Bankruptcy Court that the statute is entitled to a straightforward reading. The failure to pay debts in a general manner, without regard to specific debts, is the statutory test for involuntary petitions.

The equity test focuses, not on whether assets exceed liabilities, but rather on the failure to pay debts in the ordinary course as they become due. *Cf. Kreps v. Commissioner of Internal Revenue,* 351 F.2d 1 (2nd Cir. 1965). It must, however, be interpreted to accommodate the possibility that particular debts are unpaid because they are de minimis or merely overlooked, or are, for some other legitimate reason, in question. None of these circumstances are presented here.

### III.

The Court concludes that the Hills have generally failed to pay their debts within the meaning of 11 U.S.C. § 303(h). Accord-

ingly, the Orders of the Bankruptcy Court, dated June 5, 1980, in the above-entitled matters are affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

1. There is no indication that Hills' other debts are anything other than such consumer debts.