**In re John C. TURNER, Debtor.**

**Bankruptcy No. 82–0930–L.**

United States Bankruptcy Court,
D. Massachusetts.

May 9, 1985.

---

**232**

Jon D. Schneider, Goodwin, Procter & Hoar, Boston, Mass., for debtor-Turner.

Robert Somma, Goldstein & Manello, Boston, Mass., for petitioning creditors.

Christopher W. Parker, Craig & Macauley, Boston, Mass., for debtor-Thrifty Liquors.

Terry Philip Segal, Segal, Weyland, Moran & McMahon, Boston, Mass., trustee.

## MEMORANDUM DECISION

THOMAS W. LAWLESS, Chief Judge.

This matter originally came before the Court when John C. Turner ("Turner") opposed the involuntary petition filed against him by certain alleged creditors ("the Petitioning Creditors") under Chapter 7 of the Bankruptcy Code. After a Motion for Summary Judgment was filed by Turner, and an opposition thereto was filed by the Petitioning Creditors with supporting affidavits, this Court ruled that four of the claims asserted by the Petitioning Creditors were contingent as to liability within the meaning of Section 303 of the Bankruptcy Code. As to the fifth claim, this Court held that there was a genuine issue of material fact as to whether Turner was personally liable for certain dishonored checks which he had signed. *In re Turner*, 32 B.R. 244 (Bankr.D.Mass.1983) The Petitioning Creditors alleged that Turner was so liable pursuant to Massachusetts General Laws ("M.G.L.") c. 106, Section 3–403(2), which provides, *inter alia*, that an authorized representative will be personally obligated on an instrument if he fails to indicate his representative capacity.

The Court directed that a hearing be held on the issue of Turner's personal liability on the debt represented by the dishonored checks. This matter was tried before this Court on November 8, 1983, January 26, 1984 and April 3, 1984.

## FINDINGS OF FACT

The issue presented is whether Turner is personally liable on twelve corporate checks. Each disputed check bears Turner's signature in the lower right-hand corner, without any qualification that in signing he was acting as an agent of any entity

or as an officer, director or shareholder of any corporation. The upper-middle portion of each check is imprinted with one of the following three legends:

1. THRIFTY LIQUORS, INC.
   TURNER'S PACKAGE STORE ·
   13 WHITE STREET
   CAMBRIDGE, MASSACHUSETTS 02140
2. THRIFTY LIQUORS
   215 ALEWIFE BROOK PARKWAY
   CAMBRIDGE, MASSACHUSETTS 02138
3. NEPONSET THRIFTY LIQUORS
   755 GALLIVAN BOULEVARD
   DORCHESTER, MASSACHUSETTS 02122

Turner claimed to have signed the eight checks imprinted with the legend "THRIFTY LIQUORS, INC., TURNER'S PACKAGE STORE, 13 WHITE STREET, CAMBRIDGE, MASS." as an officer of Turner's Package Store, Inc. Turner claimed to have signed the two checks imprinted with the legend NEPONSET THRIFTY LIQUORS, 755 GALLIVAN BOULEVARD, DORCHESTER, MA 02122", as an authorized representative of John F. McCarthy, Inc. Turner claimed to have signed the two checks imprinted with the legend "THRIFTY LIQUORS, 215 ALEWIFE BROOK PARKWAY, CAMBRIDGE, MA", as an officer of Thrifty Liquors, Inc.[1]

## CONCLUSIONS OF LAW

■ The liability of a drawer of a check is established by M.G.L. ch. 106, sec. 3–413(2), which provides that the drawer of a check engages that upon dishonor of the draft and any necessary notice of dishonor or protest the drawer will pay the amount of the draft to the holder or to any endors-er who takes it up. *See Griffen v. Ellinger,* 538 S.W.2d 97 [97 A.L.R.3d 791] (Tex. 1976). In the instant case, dishonor and notice of dishonor have occurred, and the drawer of these checks is primarily obligated to the petitioning creditors.[2]

■ Because Turner's signature appears on the dishonored checks, the burden is upon Turner to disestablish his personal liability as drawer. M.G.L. c. 106, Sec. 3–307(2); *Commonwealth Bank & Trust Co. v. Plotkin,* 371 Mass. 218, 355 N.E.2d 917 (1978); *Carleton Ford, Inc. v. Oste,* 1 Mass.App. 819, 295 N.E.2d 402 (1973). Turner's defense is that he signed the checks not as an individual but as an agent or representative of certain corporations.

M.G.L. ch. 106 § 3–403(2) provides the circumstances under which personal liability may be avoided by way of this defense. That statute provides in pertinent part that:

> An authorized representative who signs his own name to an instrument
> (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
> (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity....

■ This section aims to foster certainty and definiteness in the law of commercial paper, requirements deriving from the necessity that holders of negotiable instruments be able "to tell at a glance whose obligation they hold." *Rotuba Extruders, Inc. v. Ceppos,* 46 N.Y.2d 223, 413 N.Y. S.2d 141, 385 N.E.2d 1068 [25 UCC Rptr.

---

1. Between January 1982 and May 1982, Turner was the President, Treasurer and sole stockholder of Thrifty Liquors, Inc. and Turner's Package Store, Inc., and was the sole stockholder and director of Medford Thrifty Liquors, Inc. Turner was not of record an officer, director or stockholder of any of the other corporations at issue herein.

2. In that the disputed checks contain the bank stamps indicating that the checks were dishonored, it is presumed, pursuant to M.G.L. c. 106, § 3–510, that the disputed checks were dishonored and notice of dishonor was given pursuant to M.G.L. c. 106, § 3–508. No evidence was introduced at trial to rebut this presumption.

765] (1978), *quoting,* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code,* Sec. 13–2 (2d ed. 1980). *See Wurzburg Brothers, Inc., v. Coleman,* 404 So.2d 334 [32 UCC Rptr. 182] (Ala.1981).

██ To make commercial paper freely negotiable without undue risk, § 3–403(2) therefore incorporates the common law rule that unless something on an instrument's face or in the manner of its signature creates uncertainty as to whether the signer intended to sign in a representative capacity, parol evidence is inadmissible to alter the presumption that he is personally liable thereon. Thus, where an instrument both fails to disclose the representative capacity of the signer and also fails to name the principal, the signer's personal liability is conclusively established, and the admission of parol evidence is precluded. M.G.L. c. 106, sec. 3–403(2)(a). *Norfolk County Trust Co. v. Vichinsky,* 5 Mass.App. 768, 359 N.E.2d 59 (1977) (rescript). *See Lerman Container Corp. v. Letourneau* (D.C.Mass. 1st Cir.1982) 725 F.2d 664, 35 UCC Rep. 547; *K-Ross Bldg. Sup. Ctr., Inc. v. Winnipesaukee Chalets,* 121 N.H. 575, 432 A.2d 8, 11 (1981). (even where the person taking the instrument knows that the agent is signing in a representative capacity, the agent cannot introduce parol evidence to show that his signature was made for another); *Southern Oxygen Supply Co. v. DeGolian,* 230 Ga. 405, 197 S.E.2d 374 (12 U.C.C. Rptr. 916) (1973).

In the instant case, it is undisputed that the checks fail to disclose that Turner signed in a representative capacity. Thus, the threshold issue before this Court is whether the disputed checks sufficiently "name" the corporations on whose behalf Turner claims he signed to enable extrinsic evidence to be admitted to rebut the presumption of individual liability. Although Section 3–403(2) clearly states that parol evidence is not allowed where the principal represented is not so named, it fails to specify what is necessary to satisfy the requirement that the principal represented by the signer be "named." *See,* 97 A.L.

R.3d 798, 815 (1980); 2 R. Anderson, Uniform Commercial Code § 3–403:6–8 (1971); *Schwarzwalder v. Waitkoss,* 101 Ill.App.3d 337, 57 Ill.Dec. 83, 428 N.E.2d 633, 636 (1981).

The few decisions which have addressed this issue are in conflict. The decisions fall into two categories. The majority of courts follow a strict reading of § 3–403(2), while the minority view favors a more lenient approach.

The majority position, exemplified by *Southern Oxygen Supply Co. v. DeGolian,* 230 Ga. 405, 197 S.E.2d 374 [12 UCC Rptr. 916] (1973), requires a strict reading of the statute; parol evidence negativing the personal liability of the signer is admissible only where the name of the entity claimed to have been represented appears correctly. In *Southern Oxygen,* the plaintiff brought an action on a note against an individual named Felix de Golian, Jr. who asserted that he had signed the note not individually but in his representative capacity as president of Golian Steel & Iron Company. At the bottom of the note was printed "Golian Steel Co." and the address of the corporation. Thereunder appeared the bare signature "Felix De Golian, Jr." The Court of Appeals found that the words "Golian Steel Co." "named" the corporation represented and held that parol evidence was admissible on the contention that the note was signed in a representative capacity. The Georgia Supreme Court reversed, finding that, notwithstanding the fact that "Golian Steel Co." was a designation very similar to the corporate name "Golian Steel & Iron Company," the note failed to name the entity actually represented as required by 3–403(2)(b). Therefore, no question of fact was created as to whether the signer was acting in a representative capacity, and parol evidence was inadmissible.

Similarly, in *Custom Equipment Company v. Young,* 564 P.2d 1020, (Okla.App. 1976) defendant was sued individually on a check upon which appeared his bare signature and, at the top of the check, the words "H & R Disposal Service." Defendant claimed to have signed as agent for "H &

R Disposal Service, Inc." The court held that the check failed to disclose that defendant was acting in a representative capacity, stating that the words appearing on the check implied no more than an account designation or at most a trade name. "The appellation does not end with any word statutorily connoting incorporation as required by [state statute]. If anything the check strongly suggests the maker is a sole proprietor ..." *Id.* at 1023. *Accord: Federal Deposit Ins. Corp. v. West.*, 244 Ga. 396, n. 4, 260 S.E.2d 89 (1979) (court noted that where checks were imprinted "Davidson-Sarasota" and contained bare signature of defendant, parol evidence was inadmissible to show that defendant signed his name in representative capacity as president of Davidson Land Company, since the instrument neither named the person represented nor showed that the representative signed in a representative capacity); *Star Dairy, Inc. v. Roberts*, 37 A.D.2d 1038, 326 N.Y. S.2d 85, 9 UCCRS 1374 (1971) (parol evidence inadmissible to show agency where top of check set forth the name "Food for Love Acc't"; this held to designate only the account to be charged and not the name of entity for whom the individuals were signing the check); *A.L. Jackson Chevrolet, Inc. v. Oxley*, 564 P.2d 633, (Ok.1977) (Corporate officer found personally liable where he signed check in his own name and failed to indicate his representative capacity, even though check contained the corporate bank account number).

In contrast with this strict view, a few courts have held that as long as there is "some indication" that the signer may have intended to sign in a representative capacity, parol evidence may be admitted on that question. For instance, in *J.P. Sivertson & Co. v. Lolmaugh*, 63 Ill.App.3d 724, 20 Ill.Dec. 542, 544, 380 N.E.2d 520, 522 (1978) action was brought on a note signed by defendant with his bare signature, above which appeared the words "L.T.G. De." Defendant claimed that he had signed not individually but as an agent for L.T.G. Development, Inc. The court held that the abbreviation was sufficient to name the person represented as required by § 3–403.

*See also Schwarzwalder v. Waitkoss*, 101 Ill.App.3d 337, 57 Ill.Dec. 83, 428 N.E.2d 633 (1981).

Although the question of what properly constitutes "naming" an entity for the purpose of § 3–403(2)(b) is one of first impression in this circuit, a strict reading of § 3–403 is generally the rule in this circuit. *See Lerman Container Corp. v. Letourneau*, 725 F.2d 664, 35 UCC Rep. 547 (D.C.Mass. 1st Cir.1982) (personal liability found and parol evidence held inadmissible to prove agency where check contained defendant's name at top and bare signature in lower right hand corner, although defendant claimed that both parties understood that she signed on behalf of corporation of which she was sales manager); *Norfolk County Trust Co. v. Vichinsky*, 5 Mass.App. 768, 359 N.E.2d 59 (1977); *Carlton Ford v. Oste*, 1 Mass.App. 819, 295 N.E.2d 402 (1973). *Compare: Valley National Bank, Sunnymead v. Cook* (Ariz. App.1983) 136 Ariz. 232, 665 P.2d 576, 36 UCC Rptr. 578 (adopts "minority view"); *City Bank & Trust Co. v. White*, 434 So.2d 1299, 37 UCC Rptr. 488 (La.App.1983) (same).

In the instant case, I feel that it is appropriate to follow the "strict" approach favored in this circuit. That is, the corporate principal must be named with specificity before parol evidence will be admitted to disestablish the signer's liability. M.G.L. c. 106 § 3–403(3) expressly provides a mechanism by which a signer of a check may put a holder on notice that he is acting in a representative capacity; the written disclosure of both the name of the organization of which he is an agent and the office he holds with the corporation. *See Havatampa Corp. v. Walton Drug, Co., Inc.*, 354 So.2d 1235 [24 UCC Rptr. 182] (Fla.App.Ct. 1978). This mechanism, further, is not unduly burdensome or unusual but rather comports with standard business practice. Turner, having failed to utilize this simple mechanism, may clearly be bound individually. As the court noted in *Havatampa:*

The result of this decision may be considered to be harsh. Yet in view of the importance of negotiable instruments in business, banking and finance, the need for certainty and stability in the meaning of what appears on the face of such instruments and in view of what we believe the intention and meaning of the pertinent sections of the [negotiable instruments statute] to be we believe the rule we have adopted to be the better view. We believe this rule will cause less harm to commerce and result in less litigation than if we adopted the opposite view.

*Id.* at 187, quoting *Betz v. Bank of Miami Beach,* 95 So.2d 891, 894 (Fla.1957). This need for clarity is particularly true in the instant case, where the evidence suggests that Turner used his corporations interchangeably, transshipping liquor from one corporation to another, and causing liquor which had been delivered to a corporation of which he was record owner to be shipped to corporations in which he apparently held no ownership interest. In addition, other corporations and persons were apparently doing business using some form of the appelation "Thrifty Liquors." Such circumstances require that the statutory requirement for clarity come into play[3].

I therefore hold that all of the disputed checks fail to name the corporations on whose behalf Turner claims to have signed as required by § 3–403(2)(b). Turner claims to have signed on behalf of John F. McCarthy Co. those checks imprinted with the legend "Neponsit Thrifty Liquors." Nowhere on the checks is such a corporate entity named. Similarly, the checks imprinted with the legend "Thrifty Liquors" fail to indicate that the checks were signed on behalf of a corporation entitled "Thrifty Liquors, Inc." *See Custom Equipment Co. v. Young,* 564 P.2d 1020, (Okla.App. 1976). As to those checks imprinted with the legend "Thrifty Liquors, Inc, Turner's Package Store," the checks not only fail to indicate which of the two named entities is the purported principal, but fail to name the corporate entity, Turner's Package Store, Inc. on whose behalf Turner claims to have signed the checks.[4] *See also In re Chavez,* 25 B.R. 142 (Bankr.D.N.Mex.1982) (debtor held personally liable on checks imprinted with legend "Five Keys Corp. dba Pizza Inn" and signed with bare signature of debtor, who claimed to have signed as agent of Five Keys Corp.)

Because in each case the entity claimed to be represented is not named with the specificity required by § 3–403(b)(2), I conclude that the checks on their face determine Turner's liability and preclude the admission of any parol evidence to disestablish Turner's liability thereon. Turner is personally liable for the disputed checks. The claims of the Petitioning Creditors who commenced this involuntary petition are not contingent. Therefore, defendant's motion to dismiss for lack of standing is DENIED, and a trial on the issue of whether Turner is generally paying his debts as they become due will be scheduled in due course.

See attached order.

## ORDER

In accordance with the above, the plaintiff's motion to dismiss is DENIED.

A trial on the issue of whether Turner is generally paying his debts as they become due will be scheduled in due course.

---

**3.** Insofar as *In re Laskin,* 316 F.2d 70 (3rd Cir. 1963) may apply to the instant case, I respectfully disagree with the holding of that decision and decline to follow it.

**4.** The ambiguity required by § 3–403 is not that of which of several principals the purported agent signed on behalf of but concerns the threshold question of whether or not he intended to sign in a representative capacity.