BOSTON BEVERAGE CORP., M.S. Walker, Inc., August A. Busch & Co. of Massachusetts, Inc., Whitehall Co., Ltd., Crown Distributors, Inc., Petitioning Creditors, Appellants,

v.

John C. TURNER, Alleged Debtor, Appellee.

Civ. A. No. 86–1780–S.

United States District Court, D. Massachusetts.

Jan. 5, 1987.

George W. Myklulak, Goldstein & Manello, Boston, Mass., for appellants.

Jon D. Schneider, Judy K. Mencher, Goodwin, Procter & Hoar, Boston, Mass., for appellee.

MEMORANDUM AND DECISION ON PETITIONING CREDITORS' APPEAL FROM THE ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS DISMISSING THE INVOLUNTARY BANKRUPTCY PETITION

SKINNER, District Judge.

This case arises from the bankruptcy of three liquor stores owned by appellee John C. Turner ("Turner"). Turner was the sole stockholder and manager of the three stores, Thrifty Liquors, Inc., Turner's Package Store, Inc., and Medford Thrifty Liquors, Inc. ("Corporate Debtors"). Appellants Boston Beverage Corp., M.S. Walker, Inc., August Busch & Co. of Massachusetts, Inc., Whitehall Co., Ltd., and Crown Distributors, Inc. ("Petitioning Creditors"), are liquor wholesalers who sold goods to the Corporate Debtors.

On May 21, 1982, the Corporate Debtors commenced voluntary bankruptcy proceedings pursuant to Chapter 11 of the Bankruptcy Code (the "Code"). Petitioning Creditors held claims against the Corporate Debtors. Three days later, on May 24, 1982, the Petitioning Creditors brought an involuntary bankruptcy petition against Turner himself under Chapter 7 of the Code. The Petitioning Creditors alleged that Turner was personally responsible for the debts of the Corporate Debtors, that he had failed to pay these and other debts, and that he was generally not paying his debts when due. Turner denied the Petitioning Creditors' allegations and counterclaimed, asserting that the involuntary petition had been filed in bad faith and in retaliation for the voluntary filing of the Corporate Debtors.

At the same time, Turner moved for summary judgment on Petitioning Creditors' claims. He argued that because the claims were contingent as to liability, Petitioning Creditors lacked standing to bring the petition against him. *See* 11 U.S.C. § 303(b)(1). The bankruptcy judge granted summary judgment as to five of Petitioning Creditors' six claims, *In re Turner*, 32 B.R. 244 (Bkrtcy.D.Mass.1983), and held a trial to determine whether the sixth claim was contingent as to liability. The sixth claim concerned twelve dishonored checks issued by the Corporate Debtors to the Petitioning Creditors to pay for goods delivered to the Corporate Debtors. The checks were drawn on the Corporate Debtors' accounts and bore the Corporate Debtors' names and addresses, but Turner had signed them without reference to his representative capacity. Petitioning Creditors contended that Turner's failure to set forth his representative capacity on the checks rendered him prima facie liable for them. The bankruptcy judge agreed, found Turner liable on the twelve checks and ruled that Petitioning Creditors had standing to pursue the involuntary petition. *In re Turner*, 49 B.R. 231 (Bkrtcy.D.Mass.1985). The judge scheduled a second trial on the substantive issue of whether Turner was generally paying his debts when due.

At the second trial, the Petitioning Creditors sought to show that as of May 24, 1982, the date the petition was filed, Turner was generally not paying his debts when due. They sought to show that he had failed to pay: (i) the twelve dishonored checks, totalling some $35,000, which were the subject of the first trial; (ii) four dishonored checks in the sum of $7,136.50 written to Martignetti Grocery Company ("Martignetti") on accounts maintained by the Corporate Debtors but signed by Turner without reference to his representative capacity; (iii) one dishonored check for $7,034.90 written to Charles Gilman & Sons, Inc. ("Gilman") on accounts maintained by the Corporate Debtors but signed by Turner without reference to his representative capacity; (iv) rent of $2,000 due under a written guarantee executed by Turner guaranteeing the rental payments of one of the Corporate Debtors (the "rent guarantee"); (v) claims in excess of $200,-

000 asserted against Turner in four state court suits pending when the petition was filed; (vi) liability in the sum of $55,000 due under written guarantees executed by Turner guaranteeing obligations of the Corporate Debtors to Malden Trust Company and BayBank/Harvard Trust; (vii) liability resulting from Turner's failure to withhold and pay state and federal employment taxes owed by the Corporate Debtors; (viii) and judgment indebtedness arising from a judgment entered against Turner personally on April 30, 1981 in the sum of $4,864.50 in connection with the action entitled *Marie Ahearn, et al. v. Lechmere Liquors and John C. Turner, Inc.,* (Middlesex Superior Court No. 338209) ("Ahearn Judgment"). Petitioning Creditors also tried to introduce evidence that Turner had wrongfully taken money from the Corporate Debtors. Turner claimed he was generally paying his debts and sought to show that he was paying (i) consumer debts; (ii) debt secured by mortgages on his two homes; (iii) debts incurred by a real estate partnership in which Turner was a partner, for which debt he claimed to be personally liable; and (iv) several other business related debts.

The bankruptcy judge ruled that for purposes of the Code the only personal debt Turner was not paying at the time the petition was filed was the Ahearn judgment for $4,864.50. He found the other alleged unpaid debts to be either disputed, not due or not Turner's personal obligation. The judge further ruled that in the six months before the petition was filed, Turner had paid personal consumer and home mortgage debt totalling $15,760.28. Weighing the unpaid Ahearn judgment against the paid debt, the bankruptcy judge concluded that he could not find that Turner was generally not paying his debts when due. Consequently, he dismissed the involuntary petition.

Petitioning Creditors appeal numerous aspects of the bankruptcy judge's ruling that Turner was generally paying his debts when due. They also challenge the judge's ruling on Turner's motion for summary judgment that five of their six claims were contingent. Turner's counterclaim against

Petitioning Creditors has been stayed pending the outcome of this appeal.

## I. *Was Turner Generally Not Paying His Debts When Due?*

The Code provides that a "court shall order relief against the debtor in an involuntary case ... only if (1) the debtor is generally not paying such debtor's debts as such debts become due...." 11 U.S.C. § 303(h)(1). There is no mechanical rule for determining when a debtor is generally not paying his or her debts when due. *See In re B.D. International Discount Corp.,* 701 F.2d 1071, 1076 (2d Cir.), *cert. denied sub nom., B.D. International Discount Corp. v. Chase Manhattan Bank, N.A.,* 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983); 2 Collier on Bankruptcy, ¶ 303.12 (15th ed. 1986). Instead, the bankruptcy judge was required to "balance the interests of the creditors against those of the debtor." *See In re Dill,* 731 F.2d 629, 632 (9th Cir.1984). This required a two step inquiry. First the bankruptcy judge was required to determine which of Turner's alleged debts, if any, were not being paid at the time the involuntary petition was filed, and which debts Turner was generally paying immediately prior to the filing of the petition. *See In re R.N. Salem Corp.,* 29 B.R. 424, 428 (S.D.Ohio 1983). The judge was then required to compare the number and amount of unpaid debts with the number and amount of paid debts in light of the materiality of the nonpayment and Turner's general conduct of his financial affairs. *See In re the Leek Corporation,* 52 B.R. 311, 314 (Bkrtcy.M. D.Fla. 1985); *In re Reed,* 11 B.R. 755, 760 (Bkrtcy.S.D.W.Va.1981); *In re All Media Properties, Inc.,* 5 B.R. 126, 144 (Bkrtcy.S. D.Texas 1980); *aff'd,* 646 F.2d 193 (5th Cir.1981). Petitioning Creditors bore the burden of proving that at the time the involuntary petition was filed, Turner was not paying his debts when due. *In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 100 (Bkrtcy.S.D.Fla.1981).

## The "Generally Not Paying" Category

The bankruptcy judge excluded from his determination all of Turner's debts subject

to bona fide dispute on May 24, 1982. This included the twelve dishonored checks the Corporate Debtors wrote to the Petitioning Creditors, the dishonored checks written to Martignetti and to Gilman, and the four state court cases pending against Turner on May 24, 1982.

■ Petitioning Creditors argue that the bankruptcy judge erred as a matter of law in excluding disputed debts from his calculations. The judge relied upon 11 U.S.C. § 303(h)(1), which states that a court may order relief pursuant to an involuntary petition "only if ... the debtor is not paying such debtor's debts as such debts become due *unless such debts are the subject of bona fide dispute....*" 11 U.S.C. § 303(h)(1) (emphasis. supplied). Congress added the underlined language in 1984, two years after Petitioning Creditors filed their petition, *see Bankruptcy Amendments and Federal Judgeship Act of 1984*, Pub.L. No. 98–353, § 426(b) (the "1984 Amendments" or "Act"), and Petitioning Creditors contend that application of the amendment to a pending petition was contrary to the intent of Congress and manifestly unjust. I rule that both the language of the statute and its legislative history indicate that Congress intended that section 426(b) apply to all cases, including this case, pending on the date the Act was adopted, and I find no manifest injustice in such an application.

Congress passed the 1984 Amendments on July 10, 1984. Section 553 of the Act made most of the substantive provisions of the Act applicable to "cases filed 90 days after the date of enactment." Pub.L. No. 98–353, § 553(a). The next paragraph, however, carved out an exception for section 426(b) of the Act. That section was to "become effective upon the date of enactment" of the Act. I find it significant that Congress expressly made most of the Act applicable to "cases filed" after a certain date, while allowing section 426(b) simply to "become effective." Had Congress intended that section 426(b) not apply to pending cases, it would most likely have provided for the section to become effective for cases filed after the date of enactment. Its failure to use this language, which it

had used in the previous sentence, suggests that Congress intended that section 426(b) be applied immediately upon enactment to both pending and subsequently filed cases.

The legislative history strongly supports the conclusion that Congress intended that section 426(b) apply to pending cases. Congress adopted section 426(b) to correct the misinterpretation of the law made by a few of the courts applying chapter 7 of the Code. The sponsor of section 426(b) stated at the time of its passage:

> The problem can be explained simply. Some courts have interpreted section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor's reason for not paying is a legitimate and good-faith dispute over his or her liability. This interpretation allows creditors to use the Bankruptcy Code as a club against debtors who have bona fide questions about their liability, but who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings.

> My amendment would correct this problem. Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors. In the same vein, the granting of an order of relief could not be premised solely on the failure of a debtor to pay debts that were legitimately contested as to liability or amount.

> I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion. *I also believe it corrects a judicial misinterpretation of existing law and congressional intent as to the proper basis for granting involuntary relief.*

130 Cong.Rec. S7618. (June 19, 1984) (Comments of Senator Baucus) (emphasis added) (hereinafter cited as "Comments of Senator Baucus").

Allowing section 426(b) to apply to pending cases is consistent with Congress' intent that the section clarify the statute. As Congress saw it, section 426(b) did not change the law; it merely protected debtors from an incorrect interpretation of it. Immediate application to pending cases better protects debtors and, because section 426(b) does not alter the law, would not prejudice creditors. The legislative history and the plain wording of the 1984 Amendments suggest to me that Congress intended that section 426(b) apply to all cases pending on July 10, 1984.

■■■ Where Congress intends that a law apply to pending cases, it should be so applied unless it will cause the parties "manifest injustice." *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 716–717, 94 S.Ct. 2006, 2019, 40 L.Ed. 2d 476 (1974). Because section 426(b) did not alter Petitioning Creditors' legal rights, I find no manifest injustice in applying the section to their pending petition. Even before Congress adopted the 1984 Amendments, an overwhelming majority of the courts considering the issue had held that debts subject to bona fide dispute should not as a matter of course be considered in determining whether a debtor was generally not paying his debts. *See In re Dill*, 731 F.2d at 632; *In re B.D. International Discount Corp.*, 701 F.2d at 1076; *In re Mod–U–Lanes, Inc.*, 51 B.R. 660, 662 (Bkrtcy.M.D.Fla.1985) (not referring to 1984 Amendments); *In re Central Hobron Associates*, 41 B.R. 444, 450–452 (D.Hawaii 1984); *In re First Energy Leasing Corp.*, 38 B.R. 577, 584 (Bkrtcy.E.D.N.Y.1984); *In the Matter of Goldsmith*, 30 B.R. 956, 963 (Bkrtcy.E. D.N.Y.1983); *In re R.N. Salem Corp.*, 29 B.R. at 428; *In re SBA Factors of Miami, Inc.*, 13 B.R. at 100; *In re Nar–Jor Enterprises Corp.*, 6 B.R. 584, 586 (Bkrtcy.S.D. Fla.1980); *In re All Media Properties, Inc.*, 5 B.R. at 144; *see also In re Arlumsa Development Corp.*, 33 B.R. 981 (Bkrtcy.S. D.N.Y.1983) (disputed debt insufficient to ground standing under 11 U.S.C. § 303(b)(1)). The Seventh Circuit stood as almost the sole exception to this line of authority, having adopted a position that in most cases permitted a court to include disputed debts in the generally not paying category. *See In the Matter of Covey*, 650 F.2d 877 (7th Cir. 1981). This interpretation was anomalous: a number of courts had explicitly rejected it, *see, e.g., In re Dill*, 731 F.2d at 632; *In re B.D. International Discount Corp.*, 701 F.2d at 1077; *In re Mod–U–Lanes, Inc.*, 51 B.R. at 662; *In re Central Hobron*, 41 B.R. at 450; *In re R.N. Salem Corp.*, 29 B.R. at 428, and the case was not widely followed. Moreover, this construction of the statute was contrary to common sense, since a debtor's refusal to pay a disputed debt does not indicate an inability to pay debts when due. I find it overwhelmingly likely that, even before 1984, the courts would have refused to include disputed debts in the determination of whether Turner was paying his debts when due. Consequently, applying section 426(b) to Petitioning Creditors' petition did not significantly affect their rights and was not manifestly unjust.

The only other court to consider whether section 426(b) applied to pending cases reached the same conclusion and applied section 426(b) to a case pending on July 10, 1984. *See In re Stroop*, 47 B.R. 986 (D.Colo.1985); *see also In re Einhorn*, 59 B.R. 179, 180 n. 1 (Bkrtcy.E.D.N.Y.1986) (applying section 426(b) to a pending case without discussion). I find that the bankruptcy judge was correct in excluding debts subject to bona fide dispute from his determination of whether Turner was generally paying his debts when due.

■■■ In addition to challenging the bankruptcy judge's holding that disputed debts must be excluded from the generally not paying category, Petitioning Creditors also challenge his factual finding that certain debts were subject to bona fide dispute. I may overturn the bankruptcy judge's factual findings only if they are clearly erroneous. *See* Bankruptcy Rule 8013; *In re Dill*, 731 F.2d at 631; *In re Comer*, 723 F.2d 737, 739. As discussed previously, Congress adopted section 426(b) to prevent the use of the Bankruptcy Code as a "club" for intimidating debtors with genuine questions as to liability into paying disputed

debts. Consequently, a debt is subject to bona fide dispute "if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *In re Lough*, 57 B.R. 993, 997 (Bkrtcy.E.D.Mich.1986).

 I find no error in the bankruptcy judge's conclusion that at the time the bankruptcy petition was filed, the twelve checks held by Petitioning Creditors, the checks held by Martignetti and Gilman, and the four state court cases were debts subject to bona fide dispute. On May 24, 1982, it was by no means clear that Turner would be found personally liable on the twelve checks held by Petitioning Creditors. The checks were drawn on corporate accounts in payment for goods delivered to the Corporate Debtors. Each check bore on its face the name and address of one of the Corporate Debtors. The bankruptcy judge found that in the months between the return of the checks and the corporate bankruptcy filings, the Petitioning Creditors considered these to be corporate debts and looked to the corporations rather than Turner for payment. The bankruptcy judge decided that Turner was personally liable for the checks only in August, 1983, more than a year after the petition was filed. His decision rested on a technical point in the law of commercial paper, that an authorized representative who signs a check without indicating his representative capacity may be personally liable on the check, and the judge recognized that the decisions on the point were in conflict. *Turner*, 49 B.R. at 234. In fact, it took the judge three full pages to resolve the issue. *Id.* at 232–235. It seems to me that on May 24, 1982, when the petition was filed, Turner's liability on the checks was in serious dispute.

Petitioning Creditors argue that the bankruptcy judge determined in his 1983 decision that the checks held by them were not subject to dispute and that the bankruptcy judge was required to adhere to this ruling in the second trial. But Petitioning Creditors mischaracterize the judge's decision. The judge established not that there

was no dispute as to the checks, but merely that Turner was liable on them. *See id.* A debt may be subject to good faith dispute even where the debtor eventually loses the dispute on the merits. *See In re Lough*, 57 B.R. at 997. The bankruptcy judge did not err in concluding that a bona fide dispute existed on May 24, 1982 as to whether Turner was personally liable on the checks held by Petitioning Creditors.

Similarly, a bona fide dispute existed regarding Turner's individual liability for the Martignetti and Gilman checks. These checks were also drawn on the Corporate Debtors' accounts in payment of the Corporate Debtors' obligations. Turner's personal liability for those checks rests on the same technical grounds as his liability for the twelve checks held by Petitioning Creditors. Turner was not individually liable on these checks absent a judicial determination of liability, and on May 24, 1982, the outcome of any such determination was subject to bona fide dispute. On the date the petition was filed, therefore, a bona fide dispute existed as to Turner's liability on the Martignetti and Gilman checks.

 The bankruptcy judge also concluded that the claims raised in the four state court cases against Turner, if not inadmissible as hearsay evidence, would be debts subject to a bona fide dispute. This conclusion is supported by the evidence: in each of the four cases Turner raised a colorable claim. *William T. Greene v. James F. Turner and John C. Turner*, Middlesex Superior Court No. 81–1761, involved claims by each party against the other. Greene was the payor on a promissory note made in connection with his purchase of a liquor store from Turner. Greene continued to make payments on the note during the pendency of the litigation and the case settled only after May 24, 1982. There is no evidence to suggest that this was not a bona fide dispute. In *Richard K. Foley v. Thrifty Liquor Stores, Inc., et al.*, Middlesex Superior Court No. 81–3710, Turner asserted that he was entitled to retain a deposit Foley had given him when Foley refused to complete the purchase of a liquor store. In *Daniel T. Hayes, et al,*

Middlesex Superior Court No. 81–6412, Turner argued that his obligations on a guarantee terminated once one of the concerned corporations ceased to operate. And *United Liquors, Ltd. v. John C. Turner, et al.*, Suffolk Superior Court No. 53446, concerned a dispute over whether certain debt constituted corporate debt or Turner's personal liability. In each of these cases, Turner's claims are on their faces colorable, and Petitioning Creditors do not adduce any admissible evidence to the contrary. I find no reason to doubt that these cases concerned bona fide disputes.

▌ The Petitioning Creditors attack Turner's credibility as a witness and argue that the bankruptcy judge erred in believing Turner's testimony that the dishonored checks and state court cases concerned debts subject to bona fide dispute. Turner testified that there was a genuine dispute regarding his liability on the various corporate checks and the claims raised in the state court litigation. Petitioning Creditors point to inconsistencies in other parts of Turner's testimony, as well as his alleged reputation for untruthfulness, as reasons why the bankruptcy judge erred in believing Turner's testimony that the debts were subject to bona fide dispute. I do not find the bankruptcy judge's acceptance of Turner's testimony to be clearly erroneous. The Petitioning Creditors do not appear to have adduced any evidence to contradict Turner's testimony on this point, and the issues raised as to each debt are objectively colorable. Moreover, it would be improper for me to overturn the bankruptcy judge's assessment of Turner's credibility as a witness. The judge observed Turner's testimony and is in a better position to assess his credibility than am I. The mere fact that the bankruptcy judge chose to discount Turner's testimony as to the Ahearn judgment does not require that he disbelieve other testimony supported by external facts or common sense. I find no error in the bankruptcy judge's conclusion that the twelve checks written to Petitioning Creditors, the Martignetti and Gilman checks and the four state court suits were disputed debts.

▌ The bankruptcy judge also refused to find that Turner was not paying debt under the rent guarantee and guarantees of corporate debt held by BayBank/Harvard Trust and Malden Trust Company. The judge found that Turner was personally obligated to pay rent due on Medford Thrifty Liquors, Inc.'s lease, but he refused to find that payment on that debt was overdue. The rent was due for the month of May, and thus did not become Turner's personal obligation until May 21, 1982, when the Corporate Debtors filed the voluntary petition. The debt had been due for only three days when the involuntary petition was filed against Turner, and the landlord did not make demand for payment upon Turner in the three days between May 21 and May 24. Mere failure to demand payment of a debt does not necessarily excuse failure to pay the debt. *See In re All Media Properties*, 5 B.R. at 145. But where, as is true in this case, no demand is made on the debtor, the debtor is not notified of or billed for the debt, and the debt is outstanding for only a very short time, the court should not consider that the debtor has failed to pay the debt when due. *See generally id.* The bankruptcy judge did not err in concluding that Turner's failure to pay a debt only three days old, for which neither notice nor demand had been made, provided no evidence whatsoever of Turner's personal insolvency.

▌ Turner had also guaranteed some $55,000 in corporate obligations payable to BayBank/Harvard Trust and Malden Trust Company. All corporate payments on these obligations were current in May, 1982, and the guarantees were triggered only by the filing of the Corporate Debtors' voluntary petition. As with the rent guarantee, Turner had only three days in which to make payment on the guarantees before the involuntary petition was filed, and Turner received no demand for payment from the banks. I find no error in the bankruptcy judge's conclusion that these debts, like the rent guarantee, while technically an obligation personal to Turner, were

not overdue at the time the petition was filed.

■ Petitioning Creditors object to several evidentiary rulings made by the bankruptcy judge. At trial the Petitioning Creditors attempted to introduce into evidence pleadings from the four state court cases discussed previously. The bankruptcy judge refused to accept the pleadings into evidence, but accepted docket sheets from the cases for the limited purpose of proving that the claims existed. Petitioning Creditors argue that the judge's refusal to admit the pleadings was error because they sought to introduce the pleadings merely to show the existence of the claims and Turner's treatment of them. The docket sheets were, however, adequate evidence that the claims existed. Turner admitted this and the judge took it as fact. The pleadings would not show how Turner treated the claims. If introduced to demonstrate the truth of the allegations contained therein, the pleadings would clearly have been hearsay. *See* Fed.R.Evid. 801. The pleadings excluded by the bankruptcy judge were irrelevant to any use permitted by the hearsay rules.

■ Petitioning Creditors challenge the bankruptcy judge's exclusion of evidence as to Turner's alleged liability for taxes owed by the Corporate Debtors and other corporations. Petitioning Creditors sought to present evidence that Turner was responsible for the collection of the state and federal taxes of the Corporate Debtors, plus several other corporations, and that these corporations owed substantial amounts of overdue taxes at the time the petition was filed. The judge excluded this evidence.

Under both federal and state law, the corporate officer responsible for the collection and payment of tax liability may be personally liable for any amounts wrongfully withheld by the corporation. I.R.C. § 6672; M.G.L. c. 62B, § 5. To the extent he was responsible for the collection and payment of state and federal tax liabilities of the Corporate Debtors or other corporations, Turner therefore may be personally liable for amounts wrongfully withheld by

those corporations. However, at the time the involuntary petition was filed, Turner was not presently liable for any such amounts. Under the Internal Revenue Code, Turner could be required to pay the corporate tax liabilities only upon "notice and demand" by the government. I.R.C. § 6671(a). And under Massachusetts law, Turner's personal liability could accrue only thirty days after notice from the Commonwealth. M.G.L. c. 62C, § 31A. Neither the federal government nor the Commonwealth had provided Turner with notice of his personal liability for the overdue corporate taxes as of May 24, 1982. Nor had they demanded payment of the corporate taxes. And as of May 24, no court had adjudged Turner liable for those debts. The tax liabilities of the Corporate Debtors or other corporations, while potentially Turner's personal liability, were therefore not debts due as of May 24, 1982. Evidence as to the corporate tax debts was properly excluded as irrelevant by the bankruptcy judge.

■ The Petitioning Creditors also challenge the bankruptcy judge's exclusion of evidence allegedly showing that Turner wrongfully took money from the Corporate Debtors. This evidence was not relevant to the issue of whether, as of May 24, 1982, Turner was generally paying his debts when due. Evidence bearing on Turner's conduct of his own financial affairs clearly would have been relevant to determining whether Turner was generally paying his debts when due. *See In re the Leek Corporation,* 52 B.R. at 314; *In re Reed,* 11 B.R. at 760. But Turner's conduct of the financial affairs of the Corporate Debtors or other corporations is not relevant to the question of whether Turner himself was generally paying his debts when due. I find no error in the bankruptcy judge's ruling.

### The Generally Paying Category

■ In addition to challenging the bankruptcy judge's exclusion of numerous alleged debts from the generally not paying category, the Petitioning Creditors challenge the inclusion of Turner's consum-

er debt and mortgage debt in the generally paying category. They argue first that the evidence adduced by Turner failed to prove that he was paying his consumer debt in full. Turner testified at trial that he was paying all his consumer debts when due. He introduced into evidence cancelled personal checks for the five months before May 24, 1982, for telephone payments, utilities payments, credit card payments, payments to stores, payment for supplies and services, fuel payments, insurance payments, tax payments, and miscellaneous payments. Petitioning Creditors adduced no evidence to controvert Turner's assertion that he was paying his personal consumer debts when due. The fact that some of the debt represented by the checks was joint debt between Turner and his wife is not relevant. Turner need not determine what part of a telephone or utilities debt was his personally and what part belonged to his wife. Based on the evidence adduced at trial, I cannot say that the bankruptcy judge's conclusion that Turner was paying his consumer debts when due was clearly erroneous.

■ Nor did the bankruptcy judge err in including Turner's home mortgage debts in the generally paying category. Petitioning Creditors suggest that because the Code provides no affirmative relief to fully secured creditors and because a fully secured debt cannot ground a creditor's standing to bring an involuntary bankruptcy petition, the bankruptcy judge should not have considered Turner's regular mortgage payments in determining whether he was generally paying his debts when due. The Code provides no relief or standing for fully secured creditors because state collection and foreclosure proceedings allow them to protect their interests adequately. This concern is not at all relevant when deciding whether a debtor is paying his debts. In fact, that Turner was making substantial monthly mortgage payments is very relevant to determining whether he is

generally paying his debts and whether it is appropriate to adjudge him an involuntary bankrupt. The courts have held that failure to pay secured debt is evidence of failure to pay one's debts generally, just as is failure to pay unsecured debt. *Hill v. Cargill, Inc.*, 8 B.R. 779, 780 (D.Minn. 1981). I find no reason why evidence that one is paying secured debt should be excluded from the determination whether a debtor is generally paying his or her debts when due. The bankruptcy judge made no error of law in including Turner's mortgage debt in the generally paying category.[1]

■ Nor did the bankruptcy judge err in considering debts paid by Turner during the previous six months in making his determination. There is a conceptual difficulty in determining what debts a debtor was paying as of a certain date. The bankruptcy judge could not look only at debt payments Turner made on May 24, 1982. To get an accurate picture of Turner's financial condition, he had to look at the pattern of payments made by Turner before the petition was filed. I cannot say that he erred in choosing six months as a reasonable period for discerning such a pattern. Six months is enough time for a pattern of payment or nonpayment to emerge, but it is not so long as to distort the picture of Turner's current financial situation.

■ Petitioning Creditors further contend that the bankruptcy judge erred in refusing to consider "other factors" in his decision, specifically, the sources of Turner's payments, Turner's future inability to pay his debts and Turner's "overall" handling of his financial affairs. These arguments merely restate Petitioning Creditors' allegations regarding Turner's mishandling of the Corporate Debtors' affairs. As the bankruptcy judge made clear, this was an action for bankruptcy against Turner personally. Evidence as to the debts of the Corporate Debtors and Turner's handling

---

1. Petitioning Creditors also argue that the bankruptcy judge overstated the amount of mortgage payments actually made by Turner in the months preceding filing of the petition. I do not find it necessary to decide this issue because even accepting Petitioning Creditors' figures, I find that the bankruptcy judge was correct in his conclusion that Turner was generally paying his debts when due.

of the financial affairs of the Corporate Debtors was not relevant. The issue was whether Turner was paying his debts when due, and the "other circumstances" alleged by Petitioning Creditors were not relevant to that inquiry.

■ After reviewing the evidence, I find that the bankruptcy judge was correct in finding only three debts relevant to his inquiry: the Ahearn judgment for $4,864.50, which Turner had not paid; the consumer debt, on which Turner had made payments during the six months before May 24, 1982 totalling $8,185.28; and the mortgage payments, which Turner had made regularly. Balancing these debts, the bankruptcy judge found that, all things considered, Turner was generally paying his debts when due.

Contrary to Petitioning Creditors' assertions, the bankruptcy judge did not simply compare the amount paid by Turner over six months against the Ahearn judgment. He explicitly relied upon the test set forth in *All Media Properties*, 5 B.R. at 143, that:

> generally not paying debts includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the debtor's operation.

I find no error in his conclusion that under this approach, Turner was generally paying his debts when due. Turner's failure to pay a single debt, even for a long period, does not necessarily suggest insolvency. In fact, a debtor's failure to pay one debt will not usually justify finding that the debtor is generally not paying his or her debts. *See In re Reed*, 11 B.R. at 760; *In the Matter of 7H Land & Cattle Co.*, 6 B.R. 29, 31 (Bkrtcy.D.Nev.1980). In this case, Turner had made payment on over fifty consumer and mortgage debts in the months before the petition was filed. Total payments were between approximately $14,018.28 (accepting Petitioning Creditors' figures) and $15,760.28 (accepting the bankruptcy judge's findings). Failure to pay the Ahearn judgment for $4,860.50 does not appear very significant compared to either the number or amount of Turner's other payments. Moreover, despite Petitioning Creditors' allegations, there is no evidence that Turner had attempted to defraud his personal creditors, or that he had conducted his personal affairs in a manner that would justify affording his creditors the protection of bankruptcy proceedings. The bankruptcy judge did not err in concluding that on balance Turner was not insolvent as of the date the petition was filed.

## II. *The Summary Judgment Decision*

■ Petitioning Creditors had standing to assert only those claims which were "not contingent as to liability" on the date the petition was filed. 11 U.S.C. § 303(b)(1). Turner moved for summary judgment against the Petitioning Creditors on the grounds that their claims were contingent, and hence they had no standing to file an involuntary petition against him. Petitioning Creditors asserted six claims that they argued were not contingent. They claimed that: (i) Turner was liable for issuing checks to Petitioning Creditors without knowing whether there were sufficient funds in corporate accounts to cover the checks; (ii) Turner had agreed to cause Corporate Debtors to repay outstanding indebtedness ("Contract Claims"); (iii) Turner fraudulently misrepresented the Corporate Debtors' ability to pay Petitioning Creditors ("Tort Claim"); (iv) Turner illegally operated the Corporate Debtors, thereby rendering himself personally liable for debts incurred; (v) Turner operated the Corporate Debtors in disregard of corporate formalities ("Alter Ego Claims"); and (vi) Turner was personally liable on checks drawn on corporate accounts but signed by him without any indication of his representative capacity. The bankruptcy judge ruled that the Contract Claims, Tort Claim and Alter Ego Claims (claims ii-v) were all contingent as to liability. *In re Turner*, 32 B.R. at 245. Petitioning Creditors challenge this ruling, arguing that the bankruptcy judge erred as a matter of law in finding the Contract, Tort and Alter Ego claims contingent.

At all times relevant to the motion, the Code provided:

An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of the title—

(1) by three or more entities, each of which is ... a holder of a claim against such person that is not contingent as to liability....

11 U.S.C. § 303(b). The Code did not define the term contingent, and the courts before 1984 were divided in their interpretation of the term. *In re Reid,* 773 F.2d 945, 947 n. 2 (7th Cir.1985). Some courts had held that a claim based upon a cause of action was not contingent if all the events necessary to constitute the action had occurred. *See In re Longhorn 1979–II Drilling Program,* 32 B.R. 923, 926–929 (Bkrtcy.W.D.Okla.1983); *In re Dill,* 30 B.R. 546, 549–550 (9th Cir.Bkrtcy.App. 1983), *aff'd,* 731 F.2d 629 (9th Cir.1984). However, other courts held that a claim based upon a tort cause of action was contingent until judgment. *See In re All Media Properties, Inc.,* 5 B.R. at 133. Petitioning Creditors argue that the bankruptcy judge erred in adopting the latter position because the former represents the better rule of law. I disagree.

Allowing parties to file an involuntary petition based upon unlitigated claims would permit plaintiffs to use bankruptcy as a club to force potential defendants to settle their claims. *See* Comments of Senator Baucus. Allegations of bankruptcy can disrupt even stable businesses, and the threat of filing an involuntary petition could prove a powerful weapon for plaintiffs. Moreover, disputed claims should not be resolved in bankruptcy court where, as is the case here, there are adequate state court remedies. The bankruptcy judge's holding that claims not yet litigated are contingent embodies the better rule. This interpretation serves the purposes of the Bankruptcy Code by ensuring that disputed common law claims are resolved in nonbankruptcy courts and by preventing the use of the Code to coerce parties with disputed claims to give up on their disputes or settle their cases. I find no error in the judge's ruling that Petitioning Creditors' Tort, Contract and Alter Ego Claims were contingent and hence no basis for standing.

*Conclusion*

Accordingly, the decision of the Bankruptcy Court dismissing the involuntary petition is AFFIRMED.